Alex FELDMAN et al., Appellants,

v.

B. H. DRUMHELLER, Appellee.

No. 3309.

Court of Civil Appeals of Texas. Waco.

Nov. 10, 1955.

Rehearing Denied Dec. 1, 1955.

Piranio, Piranio & Ballowe, Dallas, for appellants.

Bonney, Wade & Stubblefield, Marie McCultcheon, Dallas, for appellee.

TIREY, Justice.

This is an appeal from an order granting plaintiff's motion for summary judgment.

Plaintiff brought this suit on a written contract executed by defendants and he alleged that by the terms thereof he was employed to coordinate and supervise all subcontracts and other construction in the erection of a building at 2850 Singleton Boulevard in Dallas, Texas, and described the property by lot and block number. He alleged that he was to receive five per cent of the complete cost, his fee to be payable $100 per week, and the balance payable when the contract was completed. He further alleged that the defendants constructed the building at a total cost of $40,356.65, and that they owed him a balance on the contract of $1,976.70.

Defendants filed their first amended original answer in which they averred substantially as a defense that their contract with the plaintiff was one for a proposed building and building plans and specifications, and that they submitted it to the City of Dallas for permit and approval, and after the building inspector's office considered the same it disapproved of the plans and the building permit was denied; that such building plans and specifications were also disapproved and disallowed by the Health Department of the City of Dallas and the Traffic Department which controls the parking area for said building, and that by reason thereof they were unable to construct the building according to the plans and specifications prepared by the plaintiff; that the contract, plans and specifications were abandoned and new plans and specifications were drawn and bids accepted by the defendants for said new plans and specifications as thereafter drawn; that it was necessary for defendants to make application for a loan sufficient to build the building according to the second plans and specifications and that the bank that furnished the money to them for the building demanded that said job be a turnkey job and not a cost plus job, and that the defendants offered plaintiff the opportunity to make a bid on the second plans and specifications as a turnkey job and plaintiff refused to make such bid and refused to perform under the new plans and specifications. Thereafter plaintiff filed his motion for summary judgment and in this motion he set out that in the light of the pleadings filed that there were no disputed issues of fact and by reason thereof he was entitled to judgment and he prayed for such relief.

Defendants seasonably answered this motion and in the affidavit we find the following recital:

"I am one of the defendants in the above styled and numbered cause and that toward the first part of the year of 1954, my father, Abe Feldman, and I proposed to build a building in West Dallas on a lot which we owned at that time, and that plans and specifications were drawn and that we entered into a contract with B. H. Drumheller on the proposed building on or about the 13th day of February, 1954, with the understanding that the permit for such building was to be granted by the City of Dallas and that such plans and specifications were to be approved by the City and thereupon the said Mr. Drumheller could proceed under the said contract on said building according to the plans and specifications thereupon made.

"That application was made to the City of Dallas Building Inspector, and that plans were submitted to said Building Inspector for approval, and that the said City of Dallas notified me that the plans and specifications could not be approved for the reason that they did not meet the specifications of the City with reference to sanitary sewage and that the Health Department would not approve same, and further, that the parking area was not

sufficient according to the Traffic Department, which required more space for parking than we owned, and that the building occupied too much space for the amount of land at this location.

"Therefore, we abandoned said contract and said plans and specifications and it became necessary that we purchase another lot adjoining these lots which we did, and thereupon caused new plans and specifications to be drawn and new contracts with reference to the building of same, and received bids on said contract and plans and specifications, and said contract provided for a turnkey job.

"That it was necessary for us to make application for a loan and we made such application to the Mercantile National Bank in the City of Dallas, said money to be used for the purpose of building under the new plans and specifications, and that the Mercantile National Bank would not approve a cost plus job and therefore required a turnkey job before said loan would be approved.

"That one C. T. Fields, who is a contractor and made a bid upon said new plans and specifications as approved by the City and by the Mercantile National Bank of the City of Dallas, Texas, and that he contracted to build same and contracted same to be a turnkey job and said loan was approved by the said Mercantile National Bank thereupon, and that said contract was awarded to the said C. T. Fields to erect the said building at this location.

"That the said B. H. Drumheller performed a cleanup job on said lot which we agreed to pay for and which was duly paid to him and his helpers and that he was amply paid for the work which he performed and that said work was not based upon a cost plus contract because same was unable to be performed and it was an impossibility to perform same without the permit and approval of the City of Dallas, Texas, and thereupon said contract was abandoned and held for naught upon such refusal of the City to grant said permit and to approve the plans and specifications submitted to them at that time.

"That Mr. Drumheller was aware of all of these proceedings and he was given an opportunity to bid upon said plans and specifications providing that he would agree to perform said construction on a turnkey basis, which he refused to do."

On the 17th of August 1954 the court entered an order on the motion for summary judgment to the effect that the contract between plaintiff and defendants was enforcible, but denied the motion for summary judgment insofar as the amount of damages and attorney's fees and lien foreclosure were concerned and decreed that a further hearing be had to determine the damages which plaintiff had suffered.

Thereafter plaintiff filed a second motion for summary judgment in which he averred that he stood ready and willing at all times to do the work which he had contracted to do and that defendants refused to allow him to perform the services after the work had been started, and that defendants had wholly breached their contract with him in its entirety, and he prayed for judgment in the sum of $1,976.70.

The defendants, on January 12, 1955, filed their third amended original answer and as a defense to the cause of action asserted by plaintiff plead substantially that prior to the signing of the contract relied on by plaintiff defendants delivered to him a copy of the plans and specifications for the proposed building and showed plaintiff the property owned by them where the building was to be constructed and that plaintiff knew the dimensions of the grounds on which the building was to be constructed and was asked by defendants whether or not a building permit could be obtained from the City of Dallas and plaintiff in reply stated to defendants that

he was thoroughly familiar with the zoning ordinances and building code of the City of Dallas and that the ground area and location were sufficient to meet all requirements, and plaintiff further stated and represented to defendants that he had during the time he was studying the plans and specifications checked the matter with the City building inspector's office and that he had been told by them that a permit would be granted; that defendants would not have signed said contract had it not been for said representations aforesaid; that same was a material representation which induced them to enter into said contract, and that such representation was false and untrue, and defendants show that after they had signed the contract the plaintiff, two or three days later, during the month of February, 1954, requested defendant Alex Feldman to go with him to the building inspector's office of the City of Dallas for the purpose of getting the building permit and that upon their arrival at said office the plaintiff procured or produced a printed form application for a building permit and directed Alex Feldman how to fill it out; that said defendant complied with the request and plaintiff delivered the application to the building inspector or one of his deputies and that after approximately an hour, while the building inspector's office was processing said application, the plaintiff and Alex Feldman were both informed that the application would have to be refused and denied because the ground space or dimensions of the property were insufficient to afford fifteen parking spaces and to construct laterals for the septic tank which was to be constructed on the premises and called for by the plans and specifications. Defendants further averred that by reason of plaintiff's said misrepresentations said contract is not enforcible in plaintiff's behalf. They further plead that after the building inspector's office' refused to issue the permit they were very much dissatisfied and told plaintiff that the whole thing was off; that plaintiff then stated that if he was given a few days to work on the matter he felt confident that he could still procure a building permit; that he failed

to do this and on or about the 20th of February 1954 he came to defendants and asked them to pay him $100 for supervisory work which he claimed to have done under the contract; that defendants refused to pay said amount because they then knew that they would have to acquire an additional piece of land in order to procure a building permit to construct the building and discussed with plaintiff the matter of purchasing additional adjoining land, as well as their financial inability to buy the land and at the same time use their own funds for the construction of a building, and that their bank would not finance or lend them any money for the construction of the building unless it was a turnkey job; that in the course of this conversation plaintiff agreed that if the defendants would give him an opportunity to bid on the proposed new plans and specifications which were to be made for the enlarged piece of ground and after the purchase of the additional piece of ground was made he would accept $50 on the old contract and forget the entire matter; that they paid plaintiff the sum of $50 instead of $100 and thereafter when the second plans and specifications were prepared gave plaintiff copies thereof to enable him to make a bid on the turnkey job; that plaintiff declined and refused to make any bid and told defendants that he had consulted an attorney and had decided to sue them on the old contract. Defendants aver that the foregoing facts constituted a complete abandonment of any rights plaintiff may have had under the old contract sued on, or in the alternative that such facts constitute a new contract or a novation, which defendants complied with, and that they are no longer bound or obligated to plaintiff for any further sum. Defendants verified this amended pleading and thereafter filed sworn motion to vacate the order heretofore entered. Thereafter, on the 20th of March 1955 the trial court entered a decree wherein it found for plaintiff against defendants in the sum of $1,976.70, and established a mechanic's lien on the property to secure the enforcement of the judgment. The judgment also provided for interest at the rate of six per

cent per annum from date of judgment and costs.

Defendants seasonably filed their appeal to the Dallas Court of Civil Appeals and the cause is here by virtue of an order of the Supreme Court equalizing the dockets of the Courts of Civil Appeals.

The judgment entered is assailed on four points. They are substantially: (1) that the court erred in partially sustaining appellee's first motion for summary judgment; (2) that the court erred in overruling and not sustaining appellants' motion to vacate said partial summary judgment; (3) the court erred in sustaining appellee's second motion for summary judgment; and (4) the court erred in overruling and not sustaining appellants' plea in abatement and refusing to dismiss appellee's suit. We sustain Points 1, 2 and 3.

In deciding the questions here presented we are bound by the interpretation given Rule 166–A, Texas Rules of Civil Procedure by decision of our Supreme Court in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, pts. 1–3, 4, being particularly applicable and controlling here. The last expression by our Supreme Court on the rule here before us is found in Smith v. Bolin, Tex., 271 S.W.2d 93, which opinion reaffirms the pronouncements made in the Gulbenkian case. Having the above rule in mind, what do we find to be the factual situation here before us? We think that all we have to do is to refer to the pleadings of the plaintiff and defendants, which we have set out at some length. If the plaintiff represented to the defendants that the initial plans and specifications submitted were in keeping with the ordinances of the City of Dallas and that they could obtain the permit to con-struct the building according to such plans and specifications and they relied on these representations of plaintiff made by him to them, such allegation certainly created a factual situation that defendants had a right to submit to a jury, if they desired to do so. Going back to the pronouncements in the Gulbenkian case, we there find this statement [151 Tex. 412, 252 S.W. 2d 931]: "The burden of proving that there is no genuine issue of any material fact is upon the movant, and 'All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment.'" In addition thereto, there is another general rule here applicable and that is, " * * * if a motion involves the credibility of affiants or deponents, or the weight of the showings or, it is said, a mere ground of inference, the motion will not be granted." Measured by the foregoing rules and the authorities here cited, we are of the view that the pleadings of the defendants and their affidavits thereto tendered a material fact issue as to whether or not they are liable to the plaintiff in any sum whatsoever. It follows that we are of the view that the defendants were entitled to go to trial on the issues made by the pleadings, and that the court erred in granting summary judgment.

Appellants' plea in abatement is overruled without prejudice to present it on retrial.

Accordingly, the order entered on the 17th of August 1954, decreeing liability on the contract, is hereby set aside, vacated and held for naught. The judgment entered in the cause on the 8th of March 1955 is reversed and the cause is remanded to the District Court for trial on the merits.