**J. W. GUNNELS, Appellant,**

v.

**Carl ATCHESON et al., Appellees.**

**No. 6586.**

Court of Civil Appeals of Texas. Amarillo.

March 26, 1956.

King Fike, Dalhart, Eli Willis, Dumas, for appellant.

Lovell & Lyle, Dumas, for appellees.

PITTS, Chief Justice.

From a summary judgment in behalf of appellees, denying appellant any recovery against them for the alleged balance of $3,387.59 due him for drilling and equipping an irrigation water well and for foreclosure of his mechanic's and materialmen's lien against the designated property, an appeal has been perfected. Appellant, J. W. Gunnels, sued appellees, Carl Atcheson and wife, Bettie Ruth Atcheson, Ernestine Atcheson, a widow, Thelma Atcheson, a feme sole, Vivian Atcheson, a feme sole, and Jack H. Mills, for the said balance of his alleged account and foreclosure of lien mentioned. All of the appellees except Jack H. Mills were the joint owners of the section of farm land on which the said water well was located in Moore County, Texas, and Jack H. Mills was the tenant on the said land under a ten year written lease contract beginning early in 1953. The oral contract for drilling and equipping the said water well was entered into between appellant and appellee, Jack H. Mills, on or about May 1, 1953, after an agreement for such well had been made between Mills as a tenant and Carl Atcheson as the landlord representing all of the previously named joint owners of the land. The drilling contract, negotiations and transactions here involved were had, however, only between appellant and appellee, Jack H. Mills. The joint owners of the land will not be hereafter individually referred to other than Carl Atcheson as the landlord, who represented all of the owners.

Appellant pleaded in effect that as a result of negotiations between him and appellee Mills, on or about May 1, 1953, he prepared a detailed estimate of $13,029 as the proposed cost of a complete job of drilling and equipping the irrigation well for appellees, to be submitted by him to the Government Lending Agency, seeking a loan for money to pay for the contemplated well and equipment and that the application made by Mills for such a loan was approved for $12,000; that the original agreement was to drill and case the well 450 feet deep but a later test hole revealed the necessity of drilling and casing the well 502 feet deep, which was agreed upon by the parties knowing that such would cost an additional sum; that the well was accordingly completed and equipped after which appellant submitted an itemized final account for all of the work, services, machinery and equipment in the sum of $15,887.59 to appellee Mills, who in turn submitted it to the Government Lending Agency and obtained from it a check for $12,000 made payable to appellant, which check appellee Mills delivered to appellant, who paid the well driller, B. F. Block, for his services and applied the remainder on the account due him; that the remainder of the total account due was $3,887.59 until appellee Mills and the landlord Carl Atcheson paid appellant an additional $500 to be applied

on the account, leaving a balance due of $3387.59, which sum was due on December 10, 1953, but never paid, even on demand, after which appellant fixed a lien against the said designated property and thereafter sued to collect the said balance of the account, reasonable attorney fees, costs, and to foreclose his lien.

Appellees answered by general and special denials and by a cross-action for general, special and exemplary damages, alleging in effect that appellant had agreed to drill and equip an irrigation water well under a total turn-key job contract that would produce 1,000 gallons per minute but that the well had not been properly drilled or gravel packed, and the casing not properly perforated, for which reason appellant had breached his contract as to his representations, guaranties and warranties. To the cross-action, appellant interposed a general denial.

The depositions of appellant and appellee Mills were taken and thereafter appellees, on April 29, 1955, filed an unverified motion for a summary judgment, alleging that appellant had already been paid more than was due him according to the provisions of his own pleadings and his own testimony given in his deposition, for which reasons they alleged he was not entitled to any recovery. It was agreed by stipulation of the parties that the testimony given by appellant and appellee Mills by deposition would be used by all parties at the hearing on appellees' motion for a summary judgment and such constituted all of the evidence introduced at the said hearing held on May 5, 1955. Upon considering the pleadings and the evidence, the trial court granted appellees' motion for a summary judgment but did not enter its judgment until June 24, 1955. Prior to the entry of its summary judgment denying appellant any recovery, appellant, on June 23, 1955, filed a verified answer supported by his affidavit specifically denying the alleged grounds for appellees' recovery as set out in their said motion for summary judgment and by his said affidavit showed a balance due appellant by appellees, in any event. According to the transcript before us, on June 24, 1955, immedi-

ately before the trial court's summary judgment was filed for record, appellees filed a motion to strike appellant's answer and affidavit in reply to their motion for a summary judgment on the alleged grounds that it was presented after the trial was had. Appellees' said motion to strike appellant's said answer and affidavit was granted, sustained and the same was ordered stricken by the trial court after the summary judgment had been entered and filed but on the same day. After the said summary judgment had been entered and filed, appellees, without disturbing their defenses pleaded, likewise filed a motion to dismiss their cross-action without prejudice and such motion was thereafter granted by the trial court and it was so ordered after the summary judgment had been entered but on the same day. Appellant thereafter filed his motion for a new trial which was overruled by the trial court on August 12, 1955, from which an appeal has been perfected.

■ In his first and third points of error, appellant charges in effect that the trial court erred in sustaining appellees' motion for a summary judgment and entering such judgment accordingly when the pleadings before the trial court raised material issues of fact to be determined upon the trial on the merits and because all of the evidence introduced shows that the appellant is entitled to recover $3,387.59 due him by appellees. For the reasons hereafter stated, we sustain appellant's first and third points of error, as a result of which his other assignments are immaterial.

After appellant had paid the well driller, B. F. Block, in full for his services out of the $12,000 Government check, appellees have, in effect, challenged appellant's authority to do so and have actually raised the question of who, if anybody, employed Block to drill the water well in question. It seems from the record that appellant probably thought appellee Mills had employed Block while appellee Mills, according to his testimony, thought appellant had employed Block under a subcontract. Mills testified that he contracted with appellant "for a turn-key irrigation job, which in-

cluded everything, material, labor and services, with water running into the ditch." Appellee Mills further testified that all of his dealings were with appellant Gunnels, with whom he made the contract for a complete turn-key job; that he had nothing to do with Block, whom he did not know, but he did show Block where to drill the well when he came to begin drilling; that he acknowledged the estimate, which showed a complete turn-key job, got the Government Loan Agency to approve it and make him the $12,000 loan; that he took the final estimate of $15,887.59 to the Government Agency after the completion of the well, got the $12,000 check, which was made payable to appellant, took it and gave it to appellant and thereafter he and the landlord, Carl Atcheson, paid appellant $500 more on the account and offered to sign a note for the remainder of $3,387.59, but appellant said he wanted the cash. Finally, when appellee Mills was asked, "When you first started out talking to Block and Gunnels about drilling the well, did Mr. Block tell you what it would be for drilling, per foot?" he answered, "Let's leave Mr. Block out of this. I did my dealing with Slim." (Slim meaning appellant Gunnels.)

Notwithstanding the foregoing testimony, appellees now contend that there were two separate contracts and there should have been two separate accounts, one with appellant and a separate one with the driller, B. F. Block, and that separate and apart from the Block account they have already paid appellant more than was due him. However, appellant had already paid Block for all of his services out of the $12,000 check made payable to him by the Government Loan Agency and delivered to him by appellee Mills before appellees raised the question that the accounts of appellant and Block should have been separate and that appellant should not have been the paymaster for Block's part of the services performed.

In his deposition, appellant testified that the balance of the account in the sum of $3,387.59 was due and owing to him by appellees; that "there was no subcontract" made between him and Block, but "it was all figured together" in the estimate furnished; that there was no particular agreement made between him and Block to drill the well in question, but Block was a well driller and "he was working out of our place and headquartering there;" that the well was drilled by Block according to the estimate and the amendment thereto authorizing the well to be drilled deeper than originally planned. Appellant's further testimony corroborated that given by appellee Mills concerning the estimate, the loan, the payments made on the account and the offer of appellee Mills to make a note for the remainder of the account.

According to their testimony, both appellant and appellee Mills knew B. F. Block was drilling and casing the well and neither of them raised any question about it during the process. Mills showed him where to drill the well. Both parties visited and inspected the work at various times during the process. According to the overwhelming weight of the testimony of both parties there was, in any event, a tacit understanding of the parties sufficient to bind them both concerning B. F. Block's services rendered in drilling and casing the well for them in accordance with the approved estimate as mutually amended by drilling deeper and concerning Block's right to receive pay for his services so rendered. 32 Tex.Jur. 674, Sec. 26, and other authorities there cited. However, if there was not even a tacit understanding that would bind the parties, the question of whether or not there was an agreement made with Block to drill the said well and receive his pay therefor would be material fact questions to be determined at a trial on the merits. Block's version of the matter is not before us since he gave no testimony at the hearing. However, the evidence before us reveals that Block will probably be a witness at the trial on the merits.

In its summary judgment, the trial court denied appellant any recovery, while the overwhelming weight of the testimony reveals that appellees are obligated to appellant for the balance due on the account, and it seemed to be mutually understood

that appellant was the paymaster for the services and material furnished to drill and equip the well. It appears that appellee Mills understood appellant was to be paymaster in any event since he testified that he made a contract with appellant alone for a turn-key job for which appellant alone was responsible and Mills paid to appellant all the monies turned in to be applied on the account and offered to sign a note for the remainder. Appellee Carl Atcheson, representing all other joint owners, must have thought appellant was the paymaster, since he joined in a payment to appellant and offered to sign a note to appellant with Mills for the balance due. It is possible, however, that at a trial on the merits, appellees may reduce, offset or completely eliminate the balance due as a result of their claims made in their pleaded defenses.

■ The purpose of the summary judgment rule is to preserve the trial court's time and protect it from hearing frivolous defenses and to defeat attempts by the use of formal pleadings as a means to delay the recovery of just demands. However, such a judgment may be proper but only if, as a matter of law, the plaintiff could not succeed on any of the theories pleaded by him for recovery. Schroeder v. Texas & Pacific Ry. Co., Tex.Civ.App., 243 S.W.2d 261, and Kaufman v. Blackman, Tex.Civ. App., 239 S.W.2d 422, 428. The latter case cited further holds that such a rule "should be temperately and cautiously applied, 'lest abuse reap nullification.'" It further holds that such a motion should be denied if it appears that a substantial fact issue may exist, regardless of informalities and defects in the resisting party's papers presented.

■ A movant for a summary judgment has the burden of proving that no genuine material issue exists and every reasonable inference which can be properly drawn in favor of the adverse party will be indulged in his favor and such motion should be overruled if the record, viewed in a light most favorable to the resisting party, discloses a material issue of fact. Loud v. Sears, Roebuck & Co., Tex.Civ.App., 262 S.W.2d 548.

Appellant having sued for a balance due him by appellees, and having offered substantial evidence in support thereof, and appellees having urged that appellant has been fully paid, constitutes a controverted material issue to be heard in a trial on the merits. In any event, it was not proper in a summary judgment to deny appellant any recovery when the overwhelming weight of the evidence shows the account in question unpaid. Appellees' motion for a summary judgment should have been denied by the trial court. Its judgment is therefore reversed and the cause is remanded to the trial court for a trial on the merits. Reversed and remanded.