Kenneth Ray TYSON, Appellant,

v.

**ASSOCIATES INVESTMENT COMPANY**
et al., Appellees.

No. 15506.

Court of Civil Appeals of Texas.

Dallas.

Oct. 9, 1959.

Rehearing Denied Feb. 5, 1960.

Associates. Tyson filed answer and cross-action alleging that the note balance was not collectible perforce of usury and Anti-Trust Statutes of Texas; and that in any event Tyson had been over-charged on his insurance and was entitled to damages. Tyson brought in as additional parties in cross-action defendants Morris Robinson, doing business as Morris Robinson Motor Company, Emmco Insurance Company and Associates Investment Company, both Indiana Corporations; alleging that the latter wholly owns and controls Associate Investment Company of Texas and Emmco Insurance Company.

On motions, the trial court ordered summary judgment for plaintiff Associates on its main action, also on his cross-action against said plaintiff and Emmco. The Court then severed the cause as to all parties thus disposed of, rendering final judgment in their favor, leaving undisposed of only the cross-action of Tyson against Morris Robinson, doing business as Morris Robinson Motor Company; further holding, however, that it had no jurisdiction over Associates Investment Company, an Indiana Corporation. From these final orders, pursuant to Rule 166–A, the appeal is taken.

This 173 page Transcript reflects protracted litigation, the factual background of which must be related in detail before reaching appellant's several points of error and answering counterpoints of appellees.

On March 21, 1956, Associates filed this suit against Tyson for said balance allegedly due on an original note of $2,300 described as dated August 21, 1955 signed by Tyson and payable to Morris Robinson Motor Company, in 17 monthly installments of $72 each, and a final installment of $1,076 on September 22, 1956; which original note had been assigned and delivered to plaintiff Associates on August 21, 1955 for valuable consideration; plaintiff then alleging that said note had been secured by a chattel mortgage lien on a 1955 Chevrolet Model automobile and after same had been reduced

---

Fritz & Vinson, Dallas, for appellant.

Bonney & Wade and H. B. Houston, Dallas, for appellees.

Robert M. Ewing, Dallas, amicus curiae.

YOUNG, Justice.

Rule 166–A, Texas Rules of Civil Procedure. Summary Judgment proceedings. Associates Investment Company, a Texas Corporation, brought this action against Kenneth Ray Tyson for recovery of an alleged balance of $403.50 plus attorney's fees on a $2,300 note executed by Tyson to Morris Robinson Motor Co. and assigned to

to $2,156 that Tyson defaulted in the monthly payments, requiring plaintiff holder to repossess the car. It was then alleged that after repossession and repairs to said car, it was re-sold for the highest sum obtainable, to wit: $1,700; Tyson becoming entitled to the following credits on the $2,300 note: installments paid by defendant $144; expenses of repossession, $21.95; credit on re-sale of car, $1,700; insurance premium credit, (Emmco policy) $74.45; leaving a balance due plaintiff of $403.50 for which it sued, plus 15% attorney's fees, or a total of $464.03 and costs.

Appellant Tyson's sworn answer and cross-action are lengthy and must be summarized basically, including the following allegations: that he had agreed to buy from Morris Robinson Motor Company, through an agent or employee named Cotton, a Chevrolet automobile at a selling price of $2,985, being allowed a trade-in value on his Plymouth car of $1,195, leaving a net balance of $1,795 to be financed; that such agreed amount was to be financed at 6% per annum, Cotton then asking Tyson if he could pay as much as $72 per month; and on affirmative reply was informed that payments would be that amount per month for seventeen months, with a bumper note to be financed, not advising Tyson of the amount of same; that the deal was closed by exchange and delivery of the automobiles, Tyson's payment to the Motor Company of $37 for license, tax and title fee on the Chevrolet, and his executing papers in blank upon representation by the Motor Company's salesman that they would be filled out in accordance with above terms of sale. That there was a fraudulent breach of these representations in that subsequent to Tyson signing the sales contract and note in blank, the Motor Company fraudulently inserted the figure $2,300 as the deferred balance due on the Chevrolet; further figures indicating that the final installment note was $1,076; all of which being without Tyson's knowledge and consent; that appellant discovered the fraud after making two monthly payments of $72

each to the finance company (Associates); thereafter trying without success by contacting both Associates and Robinson Motor Company to have the interest rate reduced to 6%, the amount agreed upon; that Associates Investment Company had bought the contract with notice of the fraud; Tyson seeking relief from the transaction by proposing a return to Associates of the Chevrolet he had bought in exchange for his Plymouth car valued at $750; a refund of the $144 he had paid on the note, and the $37 paid for license, tax and title fee on the Chevrolet. His cross-action was for compensatory damages against the motor company; praying for judgment against other cross-defendants "for rescission and cancellation of the note, conditional sales contract as well as of the entire fraudulent and usurious transaction, return of the entire consideration," etc. He alleged that Associates Investment Company, an Indiana Corporation, was the parent company, owning and controlling the Texas Associates Corporation and Emmco Insurance Company in their dealings with him. Though lengthy, it is necessary to detail in sequence the further pleadings of all parties, motions, affidavits, court orders and judgments up to the decree of Judge Hyer dated May 26, 1958, but signed June 17, styled "Amended Final Judgment and Order of Severance", which becomes the basis of this appeal.

On May 15, 1956 Texas Associates filed motion for summary judgment supported by affidavit of E. G. Liechty, its agent, stating facts generally as set forth in plaintiff's original petition; paragraph of said affidavit reading as follows: "I state further that the conditional sales contract and note were agreed upon between Kenneth Ray Tyson and Morris Robinson Motor Co. at the time the said Kenneth Ray Tyson purchased the said car and that the figures contained therein were those customarily used upon a sale price of the amount for which the car was sold in time sales contracts, and that Kenneth Ray Tyson has not paid, nor did he agree to pay, nor did the said time

sales contract provide for payment of any interest."

Previously and in the same connection, plaintiff Associates had propounded to defendant Tyson the following interrogatories for admissions under Rule 169, T.C.P.: (1) "That when defendant signed the papers at Morris Robinson Motor Company, no one from Associates Investment Company was present. (2) That defendant signed the papers so that defendant could have possession of the 1955 Chevrolet at once. (3) That at no time during the purchase transaction did anyone from Associates Investment Company make any representations to defendant about any phase of the transaction. (4) That defendant on the date of signing the note and contract saw the full face of the papers which he signed including the words 'time price' and 'deferred balance'. (5) That defendant knew that he was not paying cash for the automobile. (6) That defendant knew that he was to pay for the automobile upon a time balance plan. (7) That defendant has no writing signed by Associates Investment Company or any of its officers or employees that contains the facts and figures which he says he and one 'Cotton' discussed. (8) That defendant has no release signed by Associates Investment Company or its officers or employees releasing him from the note which he signed." To this request Tyson, made answer as follows: "In response to the plaintiff's request for admissions previously filed herein, * * * the defendant, Kenneth Ray Tyson states as follows: (1) The Defendant cannot truthfully answer this statement because there were several people present at the time he signed said papers, and he did not know all persons present. (4) It is not true. (6) The Defendant cannot answer this statement because he does not know what the Plaintiff means by 'time balance plan.' "

To above motion for summary judgment Tyson made lengthy reply supporting same by affidavit here quoted in greater part: "On or about August 21, 1955, in Dallas, Texas, I purchased from Morris Robinson Motor Company, Cross-Defendant in this cause, a 1955 Chevrolet automobile. Prior to the purchase, I negotiated with the manager of the sales lot, who called himself 'Cotton', and who represented that he was the agent and employee of Morris Robinson Motor Company. A sign on said automobile indicated the sales price was $2,985.00. The manager of the sales lot, 'Cotton', confirmed said price. I purchased said automobile at the agreed price of $2985.00 and traded-in a 1949 Plymouth automobile, which belonged to me, at the agreed trade-in price of $1195.00, leaving a net balance of $1795.00 to be financed. Upon being informed by the sales manager 'Cotton', that he could get the balance of $1795.00 financed at the rate of 6% per annum, I made that agreement with him. At that time, 'Cotton' informed me that inasmuch as there was no clerical workers available, that all papers would have to be signed in blank, but that they would be filled out in accordance with the verbal agreement heretofore set forth. At that time I wrote a check for $37.00 for license, tax and title fee, and gave it to 'Cotton'. The check was made payable to Morris Robinson Motor Company, Cross-Defendant. 'Cotton', the sales manager, had me sign all papers in blank except for the amount of payments which was $72.00 per month, did not give me an opportunity to purchase automobile insurance company of my choice, but advised me that I would have to purchase insurance through the finance company. One of the papers which I had signed in blank was later filled in to show a balance due of $2300.00, of which $98.75 was paid for insurance, and of which $406.25 was finance charges for a period of 18 months, which is well over 10% per annum for the amount financed. I was never given a copy of the note or the conditional sales contract which I signed. I later received a payment book from Associates Investment Company and made two payments of $72.00 each; however, before I made a third payment, I was able to determine that I was paying more than 10% interest on the note. Inasmuch as I did

not know the amount filled in in blank on the contract which I had signed, I did not realize the amount that had been inserted in said contract until on or about November 1, 1955, at which time I received a copy of the automobile certificate of title; whereupon I immediately went to the office of Plaintiff, Associates Investment Company in Dallas, Texas, and complained that the terms of the note were not as I had contracted for, and that I wanted the note corrected. Associates Investment Company, Plaintiff, refused to do anything about the note and directed that I go to Morris Robinson Motor Company, Cross-Defendant; whereupon I went to Morris Robinson Motor Company on three separate occasions, and each time I was told that there was no one there that could talk to me about the contract. I asked to see Morris Robinson in person and was denied. Finally, I requested Associates Investment Company to take the automobile and to cancel the note, which they agreed to do. A man from Associates came out and took the car. I sincerely understood that by turning the automobile over to Associates Investment Company that I would be exonerated from further liability on the note. I do not have in possession, nor do I have access to the papers, including the sales tax receipt, on my car purchase, nor to the official and existing records of Morris Robinson Motor Company, Associates Investment Company, or Emmco Insurance Company pertaining to my transaction with them or pertaining to their ownership, control and inter-relations, and for those reasons I cannot testify to my knowledge or give further affidavit of fact to justify in greater detail my allegations, particularly as to notice of the usury and common ownership and control as set forth in Defendant's Answer to Plaintiff's Motion for Summary Judgment or in Defendant's Answer and Cross-Action to Plaintiff Associates Investment Company petition. Due to the fact that neither Morris Robinson Motor Company nor Associates Investment Company ever submitted to me a copy of the record of my transaction with Morris Robinson Motor Company of on or about August 21, 1955, at which time I purchased a 1955 Chevrolet automobile as set forth above, other than a payment book and a copy of the insurance policy, and that the only other witnesses are employees of the Defendants, I am unable to make or to obtain affidavit of additional facts sufficient to substantiate in greater detail by Answer to Plaintiff's Motion for Summary Judgment."

On June 2, 1956 the motion for summary judgment was sustained by Honorable Grover Hartt, then Judge of the Court; the judgment, to which Tyson excepted, following the recitals of plaintiff Associates' petition. Then on June 5, 1957 came on a trial of the cause on Tyson's First Amended Petition and Cross-action before the present Judge of County Court at Law No. 2; and on jury answers to special issues, judgment was rendered for Tyson, in substance, that the $2,300 note was usurious to extent of $406.25; that despite the prior $403.50 interlocutory judgment in favor of plaintiff Associates, it should recover nothing against Tyson; ordering that Indiana Associates be dismissed for "lack of service"; that Tyson take nothing by his cross-action against plaintiff Associates Investment Company and Emmco Insurance Company; with further judgment for Tyson on his cross-action against Morris Robinson, individually and doing business as Morris Robinson Motor Company for $901, itemized as follows: $720, value of Tyson's traded-in Plymouth car; $37 paid by him (Tyson) in connection with transfer of title and the $144 cash already paid to Texas Associates on the original $2,300 note.

On July 10, 1957, on motion of Texas Associates and Morris Robinson, a new trial was ordered "as to this entire cause." At this juncture, Tyson filed a paper styled "Abandonment by Cross-plaintiff of his prayer for rescission of the transaction as a whole"; obviously in view of the various attacks made by adverse parties to the Court's jurisdiction over his cross-action involving a $2,300 note. In this pleading

Tyson admitted the impracticability of proving Associates Investment Company, a Texas Corporation, as being other than an innocent holder of the note in question; stating that he "abandons, abrogates and remits his defense and cause of action for cancellation of the entire transaction of August 21, 1955, and reserves his other causes of action including for cancellation of the usurious interest of $505.00 in said contract, as to Cross-Defendants other than Morris Robinson, doing business as Morris Robinson Motor Company, and for compensatory damages as to Cross-Defendants, Morris Robinson, doing business as Morris Robinson Motor Company, and for compensatory damages in the form of restitution of $98.75 usurious insurance premiums from Cross-Defendants, Associates Investment Co., a Texas Corporation, Emmco Insurance Company, and Associates Investment Co., an Indiana Corporation, jointly and severally."

On July 25, 1957 Tyson filed his present sworn pleadings (Second Amended Answer and Cross-Action) reiterating the contents of prior pleadings, and detailing the facts as reflected in his affidavit above quoted; alleging that "The difference between the $1,795.00 lawful balance to be financed, and the $2300.00 which Morris Robinson inserted in the promissory note and conditional sales contract subsequent to. Mr. Tyson's signing the same in blank, namely, the amount of $505.00, and each and every portion thereof, is interest in the meaning and intent of the Constitution and laws of Texas. The said charges are in excess of 10% per annum are usurious, and therefore are void."

As against Associates Investment Company (Texas and Indiana) also Emmco Insurance Company he sued jointly and severally for rescission and cancellation of the usurious interest of $505; or in the alternative "the $98.75 insurance premium (Emmco) or at least the $8.75 rate overcharge in his note, conditional sales contract and transaction of on or about August 21, 1955 and for recovery of the excess of

$101.75 of usury over the balance on note" sued on by Texas Associates ($403.75). And against Morris Robinson Motor Company for compensatory damages of $931 as already itemized "resulting from fraud"; and for cost, legal interest, etc.

Associates Investment Company of Texas and Emmco then renewed their motions for summary judgments; answered by Tyson, making part thereof his original affidavit, answers to prior motions of these parties, depositions of E. G. Liechty, C. E. Aldrich, M. M. Walter, and W. A. Gaunitz, plus certain exhibits. These motions were sustained upon hearing as first above stated. Tyson appeals from such action of the court, its order of severance, also from the finding that Associates of Indiana is not a party "before this court."

Appellant's claim of liability against Emmco Insurance Company and Associates of Indiana is sufficiently shown in the following statements from his brief: "Associates placed the insurance with EMMCO Insurance Company. Associates (Texas) and EMMCO Insurance Company were wholly controlled subsidiaries of Associates Investment Company (Indiana). All three companies were alter egoes of each other, using their alleged separate corporate identity as a means of collecting usury, which is against public policy in Texas. Plaintiff did not choose EMMCO for his insurance, but Associates required the EMMCO policy before it would finance the said car purchase. The officers and directors of EMMCO were virtually all officers and directors of Associates (Indiana). The officers and directors of Associates (Texas) were virtually all officers and directors also of Associates (Indiana). Associates (Texas) EMMCO and Associates (Indiana) combined and conspired to coerce the sale of EMMCO Insurance to Tyson in order to create a restriction in trade or commerce and in the free pursuit of Tyson's purchasing of insurance, and to lessen the competition of other insurance companies in the sale of such insurance, and to receive compensation for the use, detention or forbear-

ance of money in excess of 10% per annum. The first two said purposes were in violation of Art. 7426 and 7427, [Vernon's Ann.] R.C.S., the insurance contract for $98.75 was void under Art. 7437 (formerly 7807), [Vernon's Ann.] R.C.S. The third purpose was in violation of art. 5069, [Vernon's Ann.] R.C.S. The total finance charges of $505.00, including the insurance charges of $98.75, were void under Art. 5071, [Vernon's Ann.] R.C.S. * * * Tyson was in any event over-charged $8.75 on the EMMCO insurance policy by being placed in Class LB at a higher premium rate than in Class LA even though Tyson did not use the automobile in his work or drive to and from work therewith and so notified Morris Robinson Motors, and through it, EMMCO."

Appellant's initial point argues error of the court in rendition of summary judgment for Texas Associates on its main action because issues had been adequately raised of usury in the $2,300, note; the transaction also being violative of Anti-Trust Laws. This appellee's counter-point thereto will be quoted: "It was not error for the trial court to render summary judgment, or to reinstate, augment and modify a former summary judgment, or enter a final judgment for a deficiency upon a chattel mortgage automobile note in the hands of an innocent purchaser for value, upon proper affidavits of said holder that were uncontroverted except by conclusions, plus admissions of the maker, that he knew he was not buying for cash, but on an installment note, particularly where the court had heard and considered all proof, pleadings, depositions, exhibits and arguments that defendant could possible produce, over a period of many months, including a trial by a jury, during which time the court became thoroughly familiar with all of the alleged defenses, and where defendant admitted by pleading that the note could not be cancelled."

■ Contrary to the foregoing proposition of Appellee Associates, fact questions are explicit in the affidavits of the respective parties as reflected in this record (Liechty for Associates and Tyson pro se). According to the latter, purchase price of the 1955 Chevrolet from Morris Robinson Motor Company was $2,985; agreed trade-in price of his 1949 Plymouth was $1,195; leaving $1,795; plus automobile insurance premium to be financed at 6% per annum, etc. Both the note holder and the motor company denied this; Texas Associates in request for admissions referring to a "time balance" plan; and the Liechty's affidavit stating that the figures agreed upon and contained in Tyson's conditional sales contract and note "were those customarily used upon a sales price of the amount for which the car was sold in time sales contracts * * *". The sales contract referred to was on a printed form headed "Associates"; a line reciting that the automobile purchased was "for a total time price of $————"; the transfer to Associates being of same date as contract and note. This appellee says that it is an innocent holder thereof on time credit plan as authorized by 5074a Vernon's Ann.Civ. St.; though the provisions of that Article do not appear to have been complied with by the Motor Company. Be this as it may, we are of the opinion that the foregoing testimony poses the oft recurring issue of an agreed price as against a time credit price; and if Tyson's version of the transaction be correct, the note for $2,300 was excessive and subject to the claim of usury, even though plaintiff Associates be admittedly an innocent holder. See Associates Investment Co. v. Baker, Tex.Civ. App., 221 S.W.2d 363. And cases there cited.

■ But appellee Associates contends that essentially there must be a contract to pay usurious interest (art. 5071, V.A.C.S.) whereas the oral agreement of Tyson and car-dealer was for a lawful rate, i. e., that is to pay the balance of $1,795 plus insurance at 6%; and that under the rule of Shaw v. Lumpkin, Tex.Civ.App., 241 S.W. 220, if blanks be filled in by the seller for

a higher and unauthorized amount, there can be no claim of usury, the buyer's remedy being by way of reformation and not forfeiture of the note excess as usurious interest. However, under later authorities, the party so complaining is not precluded from raising the issue of whether the contract as actually consummated constituted an agreement to pay interest in excess of that allowed by law within terms of art. 5071 providing that all written contracts whatsoever which may in any way, directly or indirectly, provide for a greater rate of interest (10%) shall be void and of no effect for the amount and value of the contract only; but if the principal sum of money or value of the contract may be received and recovered. And if the note sued on is subject to the claim of usury in hands of the original payee, it was likewise vulnerable to attack after transfer to an innocent purchaser for value. Dallas Trust & Savings Bank v. Brashear, Tex.Com. App., 65 S.W.2d 288; Associates Investment Co. v. Thomas, Tex.Civ.App., 210 S.W.2d 413; Associates Investment Co. v. Baker, Tex.Civ.App., 221 S.W.2d 363.

■ In first counterpoint, Texas Associates contends that we have no jurisdiction to consider Tyson's cross-action against it on several grounds; first, that he has failed to assign error to the court's rendition of summary judgment against him on said cross-action. Appellant has filed motion for amendment of brief with respect to such failure, which motion has been sustained by this court because of the stated inadvertancy. It is further asserted that his cross-action seeks "reformation of the $2300.00 note in addition to other relief exceeding the sum of $1,000.00." The contention is overruled. Tyson's defense of usury in the $2,300 note is to the extent of $505; (difference between that sum and the $1,795 to be financed as he claims). Under art. 5071, the usurious part of the contract only is declared void, the borrower being entitled to cancellation thereof. The lawful principal is not affected. As against Texas Associates, appellant abandons any

recovery other than pleaded in Second Amended Cross-Action; in sum, the claim of $505 usurious interest ($101.75 item representing the excess claimed as collected by Associates over its $403.75 note balance.) Though in the same cross-action appellant seeks damages against Morris Robinson for $931 we have held in Means v. Marshall, Tex.Civ.App., 220 S.W.2d 680 that when the amount sought from each defendant is below the jurisdictional amount, the County Court is not deprived of jurisdiction because these amounts taken together exceed the sum of $1,000.

In points 2 and 3 appellant complains of the Court's entry of summary judgment for Emmco Insurance Company on his cross-action "because Tyson adequately raised the issue that EMMCO was in truth a single entity with Associates or in any event conspired with Associates in charging Tyson usurious interest and in violating the Anti-Trust Laws against Tyson;" and * * * "because Tyson adequately raised the unrebutted issue that EMMCO had overcharged him on his insurance in connection with the loan."

Above points relate to the Emmco premium charge of $98.75 in connection with the loan; appellant contending that same was part of the $505 excess of usury, the insurance company becoming liable on grounds stated. In the depositions of M. W. Walter, Claims Supervisor of Emmco, B. C. Aldrich, Regional Supervisor of Texas Associates, W. F. Gaunitz and E. G. Liechty, plus Exhibits, there are facts indicative of a rather close connection between Texas Associates and Emmco. And inasmuch as appellant's point 1 against Texas Associates on question of usury has been sustained, perhaps the points above quoted should also be sustained without further discussion; in view of the rules stated in Gunnels v. Atcheson, Tex.Civ.App., 288 S.W.2d 878, 879, Syl. 2, that a "summary judgment is proper only if as a matter of law plaintiff could not succeed on any of the theories pleaded by him for recov-

ery." In this connection, however, the following observations are deemed pertinent. Appellant's prayer for affirmative relief against Emmco was "for rescission and cancellation of the usurious interest of $505.00 * * *". Emmco was not a party to the note sued upon and any cancellation against it could involve no more than the premium charge of $98.75—an adjudication against Texas Associates on the trial that such item constituted usury ipso facto having the same effect. And his claim of $101.75 (difference between the $505 and $403.25 note balance) is made against Texas Associates alone as money already received by it in excess of the $1,795 "balance to be financed."

In the alternative against Emmco, he prays for recovery of the $98.75 premium charge as in violation of the Texas Insurance Code, art. 1.01 et seq., V.A.T.S., Anti-Trust Laws, etc., Vernon's Ann.Civ.St. art. 7426 et seq.; or at least to the extent of the claimed $8.75 over-charge. Otherwise stated, appellant here asserts that he is entitled to judgment against Emmco for refund of such portion of the $505 usurious charge as has been already received by it. With respect to the foregoing are the following undisputed facts: that in arriving at the balance of the $2,300 sued for, Texas Associates gave Tyson credit for the full amount of the unearned premium due from Emmco Insurance Company on cancellation of the policy at time of automobile foreclosure; being a refund of $74.45 or approximately 75% of the $98.75 premium. If this premium was excessive to extent of $8.75 and should have been only $90 as he contends, then he has been credited with $6.95 more than he was entitled to; thus reducing any claim of over-charge to a minimal item of $1.80, to which the de minimis rule might well be applicable. At this juncture however (summary judgment proceedings) appellant's points under discussion will be sustained.

The trial court sustained the amicus curiae affidavit of O. M. Stubblefield to effect that service of citation had not been perfected upon Associates Investment Company of Indiana with result of want of jurisdiction, which ruling is complained of by appellant as having no evidence in support; also having been afforded no trial on the issues raised by such affidavit. The service was upon C. E. Aldrich, regional manager of Texas Associates, and the court's ruling has sufficient basis in the deposition of this party on file; also that of W. F. Gaunitz. We must find that appellant was accorded a hearing on above matter in view of recitals appearing both in final judgment and the court's qualified bill of exceptions of May 29, 1958. The Supreme Court holding in Burger v. Burger, 156 Tex. 584, 298 S.W.2d 119 that an affidavit as amicus curiae by an attorney who has been paid by a defendant constitutes a general appearance is not deemed controlling of the instant situation. While affiant Stubblefield here appears as attorney for Associates Investment Company, a Texas Corporation, there is nothing in the record to indicate that he was other than a gratuitous amicus curiae on behalf of Associates Investment Company, the Indiana Corporation. The point is overruled.

Point 5 complaining of severance of causes of action is also overruled. It was only by virtue of such court order that the judgments in question have been rendered appealable. Whether the several actions should again be jointed is a matter for consideration prior to another trial. Rule 174, T.C.P. (Consolidation of Causes).

Judgment of the trial court is affirmed with respect to dismissal of Associates Investment Company (Indiana); otherwise, the summary judgments for Associates Investment Company of Texas and Emmco Insurance Company of Indiana are reversed and the cause is remanded to trial court for further proceedings.

If, under Tyson's testimony the purchase price of the Chevrolet car in question was

$2,985 and trade-in value of his Plymouth car was $1,195 the balance to be financed would be $1,790 instead of the $1,795 figure as recited in the record and briefs of all parties.

### On Motion for Rehearing.

Citing Federal Mortgage Company v. Davis, Tex.Civ.App., 100 S.W.2d 717, appellee Associates of Texas contends that the vice of usury must be present in the contract at its inception and is not imported by the after conduct of the creditor, although in disregard of the loan plan adopted; that the agreement with "Cotton" for the $1,795 to be financed was at a lawful rate of interest (6%) signing the note in blank with such understanding. It is then argued that the car dealer's act in filling out the note blank for $2,300 was such "after conduct by the creditor"; not rendering the agreement first above stated a usurious one in its inception.

But in the case at bar we have a single note transaction, incomplete when signed by him and completed by the dealer by insertion of the $2,300 figure. The unsuccessful claim of usury in the Davis appeal, supra, involved after conduct of the creditor under an entirely different state of facts. Here, under Tyson's version of the transaction, had the car dealer brought suit on the note, the former could have undoubtedly raised the issue of usury among other defenses; but the note having been negotiated, he sought only "compensatory" damages against the car dealer. At the same time, as already held, Tyson was in nowise disabled from raising the same issue against Texas Associates, an innocent transferee of the note in question. Its motion for rehearing is overruled.

█ Turning to the motion of Emmco Insurance Company, we have concluded, upon restudy of the record and briefs that same must be sustained. In original opinion we sustained appellant's point 2 relative to Emmco; thereby concluding that fact issues were perhaps raised on his primary charge of a "coerced tie-in of insurance by Texas Associates and Emmco, operating as one in violation of the usury and anti-trust laws of Texas." We are now of the opinion that the point should have been overruled; first summarizing certain facts (touched upon by Emmco) which we regard as not seriously in dispute: (1) That after all it was a corporation, licensed in Texas to do business as an insurance company only, here sued as such on its own responsibility as a distinct legal entity; and likewise, that Texas Associates was in the finance business with no authority to write insurance; (2) That Emmco was not a party to the contract with Tyson or to the transaction which led to execution of the note and conditional sales contract; not a party to purchase of the note from the dealer and with no interest in the note acquired by Texas Associates as an admitted innocent purchaser; (3) That Emmco and Tyson were strangers to each other, nobody representing Emmco having solicited the writing of the policy of insurance; Tyson having agreed with the auto dealer that insurance would be included in the financing; that is, the premium therefor to be added to the note; Tyson never having heard of Emmco until he received the policy in the mail; (4) That Emmco had nothing to do with collection of the note by Texas Associates, or any of the negotiations between Tyson and Associates, or "repossession" of the car; (5) That Associates was responsible for payment of the premiums to Emmco and when the policy was cancelled, refunded to Tyson by credit on the note, the unearned premium of $74.-45; and (6) That Tyson did not give the information as to his proper classification (1-A as against 1-B) to any one but Cotton, salesman for the dealer, and that neither Cotton nor the dealer were Emmco's agents.

In this connection, it is pointed out that while Tyson in affidavit complained of no opportunity to purchase automobile insur-

**778**

ance from a company of his own choice but was advised that he would have to purchase same through the finance company, it was with Cotton, salesman for the motor company, that he had these dealings and received such advice.

Tyson's answer to Emmco's motion for summary judgment adopted by reference earlier pleadings, answers and depositions to effect that both Texas Associates and Emmco were commonly owned and controlled by Indiana Associates; the majority of Texas Associates transactions being inclusive of Emmco Insurance; almost all of Emmco policies being issued on deals of Texas Associates, along with other inter-office relationships, and that such "tie-in demonstrated a purpose to obtain additional compensation in conjunction with use, forbearance or detention of the money of the same corporate structure."

Emmco is then sued jointly and severally with the other cross-defendants "for recission and cancellation of the usurious interest of $505.00 * * *." In view of the factors and factual background first above detailed, we find no basis for an issue of joint responsibility on part of Emmco for the exaction of usurious interest when it was not a party to the contract for interest; its only connection being the premium charge, complained of as excessive. Insurance, with separate consideration or premium charge is normally a part of any automobile finance transaction; and Tyson's alleged arrangement with Cotton the salesman, included the instant charge of $98.75, or a total amount to be financed of $1,893.75 at 6%. The difference between that sum and $2,300 or $406.25 is the maximum amount of note excess that can be claimed under this record as usurious.

Further with respect to appellant's point 3 (alternative action against Emmco of $8.75 overcharge), this appellee properly suggests lack of court jurisdiction in this proceeding for any such claim.

The motion for rehearing of Emmco Insurance Company is sustained; and in consequence, the trial court's summary judgment in its favor is affirmed. Appellant's motion for rehearing as to Associates Investment Company of Indiana is overruled.