**J. WEINGARTEN, Inc., v. SANCHEZ et al.**

No. 12147.

Court of Civil Appeals of Texas.
Galveston.

March 9, 1950.

Rehearing Denied March 30, 1950

Peareson & Peareson, Richmond, Frank L. Heard, Jr., Houston, and Paul Scherer, Rosenberg, for appellant.

Baker, Botts, Andrews & Parish and John F. Heard, Houston, for appellees Basilian Fathers and Robert Aguilar.

Sidney J. Brown, Rosenberg, and Allen, Smith & Neal and M. A. Lehmann, Houston, for appellees Patricio Sanchez et ux.

CODY, Justice.

This was an action by Patricio Sanchez and wife for the death of their minor son, Fredrico, who received the injuries from which he died after he alighted from a school bus on U. S. Highway No. 59 in Fort Bend County, about four o'clock in the afternoon of October 26, 1946, when he attempted to cross the highway from behind the bus from which he had alighted and was struck by a truck belonging to J. Weingarten, Inc., which was traveling in the opposite direction from that in which the bus was headed. He died about an hour and half later in the hospital without having regained consciousness. At the time of his death he was 14 years and 20 days old.

Defendant's answer consisted of a general denial and a plea of contributory negligence. And defendant interplead third-party defendants, Basilian Fathers and Robert Aguilar, the owner and driver, respectively, of the school bus from which Fredrico had alighted, thereby suing said third-party defendants for indemnity and for contribution in case plaintiffs recovered any judgment against defendant.

The third-party defendants answered defendant's suit against them for contribution—so far as need be noted here—that defendant's truck driver's negligence was the sole proximate cause of the accident; they further alleged that Basilian Fathers is a public charity and as such conducted a school at Rosenberg, which was attended by Fredrico, and in connection with said school operated the bus in which Fredrico had been transported, and that Fredrico was a guest within the meaning of R.C.S. Art. 2212. And Basilian Fathers pled that it was immune from recovery for the negligence of its bus driver, if any, unless it was shown that Basilian Fathers was negligent in employing or keeping said bus driver.

By supplemental petition, in answer to Basilian Fathers' plea of immunity, defendant pled that Basilian Fathers carried public liability insurance covering the operation of the school bus and so was not entitled to immunity to the extent of the insurance coverage. The third-party defendants excepted to defendant's plea of insurance and the court sustained said exception and struck defendant's said supplemental petition. At the conclusion of all the evidence, the defendant and the third-party defendants each moved for directed verdicts. The court granted the motion of third-party defendant Basilian Fathers, and refused the motions of defendant and third-party defendant Robert Aguilar. And, over timely objections and exceptions of defendant to the court's charge, the case was submitted to the jury upon some 48 special issues. The court also refused special charges and special issues requested by defendant. The defendant also timely urged its motion for judgment non obstante veredicto, which was refused. The court rendered judgment upon the jury's answers to the special issues, etc., as follows: (1) That plaintiffs recover of defendant $15,551.50; (2) That defendant recover nothing against third-party defendant Aguilar.

Defendant predicates its appeal upon numerous points, which cover pages 3 to 23 of its original brief and pages 1 to 4 of its "Additional Brief to Appellant's Original Brief". Such disregard by defendant of Rule 418, Texas Rules of Civil Procedure, renders it impossible to reproduce its said points here. However, at no small labor, we have framed this opinion so as to rule directly, or by implication, upon all of its points.

At this point it is proper to state that Fort Bend County is within the juris-

diction of both the 23rd Judicial and of the 130th Judicial District Courts. By the law creating the 130th District Court, it is provided that there shall be but one general docket for both of said courts and that one clerk shall serve them as "District Clerk of Fort Bend County", who shall keep but one set of minutes, and it is also provided that all pleadings shall be addressed to "The District Court of Fort Bend County". Art. 199, Sec. 130, subsec. 5. In short, the effect of the cited statute is practically to make the jurisdiction of the 23rd and 130th District Courts, and the functions of the judges thereof, as interrelated and interlocking as is possible and yet preserve their identity as separate and distinct district courts.

It appears from the record that all parties, during the progress of the trial, filed pleadings or instruments which bore the various captions of "The District Court of Fort Bend County, 23rd Judicial District", and "The District Court of Fort Bend County, 130th Judicial District", and "District Court of Fort Bend County". Plaintiffs' first amended original petition, for instance, bore the caption "The District Court of Fort Bend County, 23rd Judicial District", but, as indicated, other of plaintiffs' pleadings and instruments bore the various captions noted, and so with respect to the other parties. However, so far as we have noted, only the Honorable G. P. Hardy, Jr., Judge of the 130th District Court, exercised any judicial function in connection with the case.

It can not be held that it appears upon the face of the record, so as to authorize defendant to raise the point on appeal for the first time, that the case was filed in the 23rd District Court and was tried in the 130th District Court without having been transferred, and that consequently the court trying the case had no jurisdiction thereof. The captions on the pleadings were at most but directions to the clerk, and, in the absence of evidence to the contrary, we must conclude that both he and the Judge properly performed their functions. So we conclude that the case was filed as well as tried in the 130th District Court,—the clerk's file mark on the various instruments merely shows "District Court of Fort Bend Co.". But should we be mistaken in the view just expressed, and if for any reason it should appear that the case was lodged in the 23rd District Court in the first instance, we know of no reason why the parties to a suit might not waive a formal written order transferring the case from the 23rd to the 130th Judicial District Court, and thereby consent to such informal transfer. Furthermore, we have noted many instances in which the defendant in the progress of the trial invoked the exercise of the jurisdiction of the court in which the case was tried. The 130th District Court had at least potential jurisdiction to try the case, and, in the sound administration of justice, courts will not permit a party to invoke the exercise of jurisdiction within a court's general powers, and then reverse the court's orders on the ground that the court in question was without jurisdiction. Spence v. State Nat. Bank, Tex.Com.App., 5 S.W.2d 754, 756; Panos v. Foley Brothers Dry Goods Co., Tex.Civ.App., 198 S.W.2d 494, 496.

Before setting out the substance of the answers of the jury to the special issues, and in order to enable them to be readily understood, we here note: That plaintiffs were a Mexican tenant farmer and his wife, who lived on a farm on the north side of U. S. Highway 59; that on the occasion in question the bus had been proceeding east on the highway (which runs east and west) when it was brought to a stop on the south side thereof, on the paved portion thereof, opposite plaintiffs' home; that the concrete or paved portion of the highway was 24 feet wide and that the shoulders of the highway gradually sloped away from the paved portion and there was nothing to prevent the bus driver from turning off the paved portion onto the shoulder when he brought the bus to a stop. When the bus driver stopped the bus, Fredrico and his 16-year-old sister and another younger sister alighted onto the shoulder, south of the concrete, and proceeded around the rear end of the bus and proceeded to try to cross the highway, when the tragedy occurred. For the sake

of brevity, we give but the substance of the special issues, as answered by the jury, preserving the numbers they bore in the court's charge, and the jury's answers:

(2) That the truck driver failed to stop his truck immediately before passing the school bus. (3) That such failure was a proximate cause of the accident. (4) That such failure was the sole proximate cause of the accident.

(5) That the truck driver was operating the truck in excess of 45 miles per hour. (6) That this was not a proximate cause.

(8) That the truck driver was operating the truck at a greater rate of speed than an ordinarily prudent person, etc. (9) But this was not a proximate cause.

(11) That the truck driver failed to keep the proper lookout. (12) This was not a proximate cause.

(14) That the truck driver failed to keep the truck under proper control. (15) But this was not a proximate cause.

(16) The truck driver failed to slow the speed of the truck as it was meeting the bus. (17) That this failure was negligence. (18) But such negligence was not a proximate cause.

(19) The truck driver failed to make a prudent application of the brakes. (20) But this failure was not a proximate cause.

(21) The truck driver failed to turn to the right to avoid striking Fredrico. (22) This failure was negligence. (23) But not the proximate cause.

(24) The truck driver failed to sound his horn. (25) This was negligence. (26) But not a proximate cause.

(27) Fredrico did not fail to keep a lookout for on-coming traffic.

(30) Fredrico did not run around the rear of the school bus and into the truck.

(33) The school bus driver did timely display a semaphore stop sign on stopping to discharge the school children, inclusive of Fredrico.

(36) The jury did not find that the bus driver stopped the bus where an ordinarily prudent person would not have stopped it.

(38) That the bus driver did stop the bus on the paved portion of the highway.

(39) That it was possible for the bus driver to stop the bus off of the paved portion of the highway. (40) But this was not a proximate cause.

(41) The bus driver did not warn Fredrico of the danger of traffic. (42) This was not negligence.

(44) That the bus driver failed to sound his horn to warn the truck driver. (45) That this was not negligence.

The school bus in question was 8 feet in width, with its door for taking on and discharging its pupil passengers on the right-hand side of the driver, near the front end of the bus. The bus was painted an orange color and on the front and rear ends were painted in 8-inch black letters "School Bus", apparently to conform to Art. 6701d, Sec. 104(b). It was also equipped with a semaphore stop sign, which showed the word "Stop" in 6-inch black letters. On the occasion in question the semaphore stop sign was in the out-position.

As indicated, the bus was headed east and defendant's truck was traveling in the opposite direction, in excess of 45 miles per hour, on the occasion in question. There was evidence to sustain the jury's finding that the bus driver did not warn the children when they were alighting on the approach of the truck. The bus driver testified that he did not instruct Fredrico to cross the highway in front of the standing bus. He further testified that it was his duty to escort the children across the highway, but he did not do so. He also testified that he began working the semaphore stop sign and sounding his horn when the truck was 300 feet distant. The truck driver did not bring his truck to a stop. See Art. 6701d, Sec. 104(a). The evidence was to the effect that the truck driver did not attempt to slow down the truck until he saw Fredrico coming out from behind the school bus, headed across the highway. The truck driver testified that he was about two blocks away before he recognized the bus as a school bus and he thought it was moving, which was the

reason he made no effort to stop before he met it; that he was about 40 feet away before he recognized that the bus was stopped; that he neither saw the stop sign nor that the bus door was open; and when he saw Fredrico he applied his brakes and turned to the right; that the child ran into the truck and he thought the front end of the truck bed hit Fredrico, just back of the truck cab.

A witness for plaintiffs, who was driving an automobile behind the truck, with no intervening traffic, testified: That he saw the school bus stop and the children get off and that they passed out of sight toward the rear of the school bus; that when next he saw Fredrico he was trotting, headed across the highway; that when Fredrico saw the truck "You could notice his foot, when he showed a little foot-work in trying to avoid the truck, but he just could not do it and was hit on his side by the bed of the truck. Now, I can't say definitely by the bed, but I know it was the outstanding part. * * * As soon as he realized that he was running into the truck, when you could notice the foot-work on his feet; that he was trying to avoid it, but couldn't."

Espacion Sanchez, Fredrico's older sister, testified for plaintiffs that she accompanied Fredrico; that when he came from behind the bus he looked and when he saw the truck he tried to step back, but it was too late. He couldn't get back far enough. That he was walking rapidly. That Fredrico did not walk right into the truck. That when he did look and see the truck coming he tried to step out of the way "and he was already into the truck and it was too late". She testified that it was the front end of the truck that struck him.

A witness for defendant testified that he had been following the school bus, unable to pass it because of the heavy traffic, and was parked behind it at the time of the accident; that the children seemed to be trying to make it around the bus as fast as they could, but none of them stopped to look down the highway; that the girls were running a little to the left of the boy and when the truck struck the boy, it knocked him against them and they were knocked out of the way; that the first the witness saw of the truck was when its front was passing the bus; that the boy was north of the center line of the highway when he was struck.

The evidence here was clearly sufficient to make out a case in the main action for the plaintiffs to go to the jury. It will be noted that no special issue was submitted to the jury, following special issue No. 2, inquiring whether the failure of the truck driver to stop upon meeting the school bus discharging pupils, asked about in special issue No. 2, was negligence. We think that such failure was not an error, and that the same constituted negligence per se as a matter of law. Reeves v. Tittle, Tex.Civ.App., 129 S.W.2d 364, 366, 367, writ refused. But if an error, it can not be now raised on appeal for the first time.

On the affirmative defense of contributory negligence, defendant had the burden of proof. Houston Transit Co. v. McQuade, Tex.Civ.App., 223 S.W.2d 64, writ refused. And the trial court did not err in submitting the issue to the jury. Nor did the court err in adding to the standard definition of negligence which he submitted to the jury in his charge, these words: " * * * and by the term 'ordinary care' as applied to a child is meant such care as an ordinarily prudent child of the same age, intelligence and prudence would use under the same or similar circumstances."

The question of when it is proper for the court to include in its charge the definition of negligence as applied to a child has often passed upon by the courts, and there is no rule of thumb to guide the trial court in those instances where the victim of an accident has passed the age at which the law conclusively presumes that it has no discretion to judge of danger, and has not yet arrived at the age where the law conclusively presumes that it has the discretion of an adult, to judge of danger, and so is charged with the duty to exercise ordinary care for his safety. The Supreme Court discussed this question at length recently in the case of Dallas Ry. and

Terminal Co. v. Rogers, 147 Tex. 617, 218 S.W.2d 456. We infer from the ruling in that case that when a defendant relies upon the affirmative defense of contributory negligence as a bar to any recovery on the part of a youthful victim of defendant's primary negligence, the question of whether the court's charge shall contain a definition modifying the definition of ordinary care to fit the case of "an ordinarily prudent child of the same age, intelligence and experience" is addressed to sound judicial discretion, and that the action of the court will be reversed only for an abuse of such discretion.

In the case of Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, the victim of the accident was an adult, and the defendant was a youth 16 years old. This case was reviewed by the Supreme Court in the Rogers case, supra. While the Supreme Court did not say so, it occurs to us that the question of whether a youth, or even a madman, shall be held civilly liable for injuries which he has inflicted rests upon a different bottom from that on which rests the rule that a plaintiff is barred of any right to recover where his own negligence (wrong) contributed to his injuries. In any case, it has never been the rule that a child—victim of the negligence of a defendant—would be barred of his right to recover therefor if he failed to exercise the care for his safety exacted of an adult. We do not hold that, in every case where a child of 14 years was the victim of the negligence of an adult, it would be proper for the court by its charge to authorize the jury to measure the care required of such victim by the measure fitted to a child of like age, etc. But we hold that under the facts and circumstances of this case, it was no abuse of the court's discretion to give the definition here given. The evidence bearing on Fredrico's capacity will be referred to when we pass on whether the verdict was excessive. But it seldom happens, even with respect to an adult, that the court is warranted in finding that the victim was guilty of contributory negligence as a matter of law. Here the law exacted of Fredrico that he exercise the care of a boy of his age, discretion and experience. If the law charged the truck driver with the knowledge that it was his duty to stop when he met the bus, we can not say that a boy who had been transported to and from school as much as Fredrico had would not know as much, and expect on-coming traffic to so stop when the school bus was discharging pupils. But be that as it may, we can not hold that the evidence convicted Fredrico as a matter of law of failing to exercise such care as a child of his years, discretion and experience should have exercised, even should we hold that he failed to look for on-coming traffic. See Galveston H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 322, 50 S.W.2d 247.

The evidence is ample to sustain the jury's finding in answer to special issue No. 3, that the failure of the truck driver to stop upon meeting the bus was a proximate cause of the accident. That alone would warrant the court in rendering judgment for plaintiffs against defendant. See the Wells case, supra, at page 325 of 121 Tex., at page 252 of 50 S.W.2d. That is, unless for some other reason, such as a conflict in the answers to special issues sufficient to destroy a basis for judgment thereon, should be shown. We find no such conflict in the answers of the jury here. Specifically, there is no conflict between the jury's answer to special issues Nos. 3, 4, and 18. The court, in his charge to the jury, had instructed them that there could be but one *sole* proximate cause. Having found in answer to special issue No. 4 that the truck driver's failure to stop the bus (which was found in answer to special issue No. 3 was a proximate cause) was the sole proximate cause, the jury consistently found that the other acts of the bus driver (which they found to have been negligence) were not proximate causes.

In answer to special issue 47, the jury found that the sum of $15,208, if now paid in cash, would fairly and reasonably compensate plaintiffs for the death of their son. Upon motion for a new trial, defendant assigned misconduct on the part of the jury, because the verdict was a quotient one. Upon the hearing on the motion,

defendant questioned seven of the jurors. It was undisputed that the odd figure arrived at was reached by adding the amounts which each juror thought ought to be awarded, and then dividing the total by twelve. From the evidence of the seven jurors questioned, taken as a whole, the court was warranted in concluding that when the jurors found themselves in disagreement as to the amount of damages, that they then, as an exploratory act, and in an effort to reach a basis of compromise, tried the experiment of adding the amount desired by each juror individually, and then dividing the total by twelve to get a working basis for agreement on the amount of damages to be awarded.

There was no evidence of any agreement by the jurors to accept, or be bound by, the result thus arrived at. And the court was warranted in concluding from the evidence of the jurors that the amount thus arrived at was discussed, and was not acceptable at first to all of the jurors. The court was warranted in concluding, from the evidence on the motion for new trial, that the individual jurors did not feel bound to accept the quotient amount, but that, after discussion, the amount was accepted on the basis of compromise in order to get together on the verdict. We do not mean to imply that the testimony of all the jurors called by defendant was in agreement. As is usual in such cases, the jurors differed as to just what was said, and what happened, and the order in which the discussion took place. For instance, one of the jurors who testified that there was no previous agreement to abide by the result, testified that it was at once satisfactory, and that it was at once written down, and returned into court without further discussion. But the court was more than authorized by other testimony to believe otherwise.

In brief, the evidence of the jurors on the motion for new trial was sufficient to support the conclusion that there was no agreement, either express or implied, to be bound by the quotient verdict. Therefore, the court was warranted in finding no jury misconduct in that connection. See Page v. Lockley, Tex.Civ.App., 176 S.W.2d 991, 994, which holding was approved by the Supreme Court with respect to said point, 142 Tex. 594, 599, 180 S.W.2d 616.

Fredrico was the only son who remained at the home of his parents at the time of his death. He was just starting in the fourth grade at school. This was due to the fact that he had to help his father on the farm until the compulsory school attendance law went into effect. At school he was an average student, or a little better. His father was a cripple, and a tenant farmer on a small farm, and was 55 years old when Fredrico was killed. His mother was 46 years old. Her life expectancy was some 23 years, and that of his father some 16 years at the time of Fredrico's death. In a word, Fredrico's parents' situation authorized as much assistance from a dutiful son as it was in the son's power to give. The testimony of his parents, and of their white neighbors, showed that Frederico was diligent; that he could do everything about a farm; and that when not busy at home he took employment from neighbors, and brought his wages home; that he could make $5 per day.

It is not debatable that the damages here awarded by the jury were high. We have finally reached the conclusion, however, that in the absence of the remittitur provision of the law, we would not be justified in reversing the judgment solely upon the ground that the verdict was excessive. The jury is generally justified in finding the pecuniary damages at a higher figure than that which merely includes proven wages. Since we would not feel authorized to reverse the judgment solely on the ground of excessiveness, we obviously can not find any amount to require plaintiffs to remit to prevent such reversal on such ground. This brings us to the questions raised with respect to the defendant and the third-party defendants, on the suit for indemnity or contribution.

It is the settled law of this State that a public charity is not liable for the torts of its servants in the absence of negligence in employing or keeping them. Southern Methodist University v.

Clayton, 142 Tex. 179, 176 S.W.2d 749; Scott v. Wm. M. Rice Institute, Tex.Civ. App., 178 S.W.2d 156, writ refused. Such rule excepting public charities from liability for the torts of their employees is based on public policy and is merely an exception to respondeat superior rule which is itself based on public policy. Id. The courts, of course, are not the only representative of the State when it comes to declaring public policy. Generally speaking, this is done by the Legislature, and where the Legislature has declared public policy, acting within its constitutional powers, courts are bound thereby.

 We think that it may be said that it has been declared as the public policy of the State that drivers of all school transportation vehicles shall be required to give security of not less than $2,000, conditioned upon the faithful performance and careful discharge of their duties for the protection of the pupils under their charge. Article 2687a; Reeves v. Tittle, Tex.Civ. App., 129 S.W.2d 364, cited above. We have no doubt that the Legislature intended to bring school busses within the protection of Art. 6701d, Sec. 104, subsections (a) and (b), and we believe that it is the duty of a public charity that operates a school bus to obtain some financial security in an amount of not less than $2,000 which shall be answerable to the pupils in the bus for any negligence on the part of the driver. And it would certainly not be against public policy to permit pupils to enforce the full extent of any security obtained by a public charity for their benefit to insure them against the negligence of the driver of the bus.

The policy of insurance which was taken out by the Basilian Fathers was not introduced in evidence, but it is doubtless written up on a form sanctioned by the State Board of Insurance Commissioners, and no doubt contained the usual provision which by its terms gave the insurance company exclusive right to defend any suits against liability thereon in the name of the Basilian Fathers. This, of course, would include the right to urge any defense against liability which was available to Basilian Fathers. We must assume that both the Basilian Fathers and the insurance company intended at least to have the policy of insurance protect the pupils transported therein from the driver's negligence. We do not believe that it would be against the public policy of the State to permit a suit by a pupil who was transported in the bus in question to recover for the negligence of the driver of the bus to the extent of the pupil's injury, not to exceed the amount of the policy of insurance, which, we think, would have to be not less than $2,000.

However, in the state of the record here, the question just discussed is academic. This, because as between Basilian Fathers and the driver of their school bus, the driver of the school bus was liable for his negligence. And the Basilian Fathers would be answerable for the bus driver's negligence only under the respondeat superior rule. The bus driver was not dismissed from the suit, and the jury exonerated him from any negligence which was the proximate cause of the accident.

We have concluded that no reversible error was committed in the trial of the case, and the judgment of the trial court is ordered affirmed.

Affirmed.