Richard SULLIVAN et al., Appellants,

v.

SISTERS OF ST. FRANCIS OF TEXAS, d/b/a Refugio County Hospital, Appellee.

No. 14155.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 31, 1963.

Edwards & De Anda, Corpus Christi, Frederic Johnson, Sinton, for appellants.

K. D. Hall, Refugio, Lewright, Dyer & Redford, Corpus Christi, for appellee.

MURRAY, Chief Justice.

This suit was instituted by Richard Sullivan, individually and as personal representative and next of kin of his minor son, Daniel Joseph Sullivan, deceased, hereinafter referred to as Danny, and as manager of the community estate existing between himself and his wife, Cassandra Sullivan, against Sisters of St. Francis of Texas, d/b/a Refugio County Hospital, Southwestern Drug Corporation and Eli Lilly & Company, seeking to recover damages growing out of the injury and death suffered by Danny, alleged to have been caused by the negligent administration of a dose of ipecac by employees of the Hospital. The trial court severed the causes of action against Southwestern Drug Corporation and Eli Lilly & Company, and granted the Hospital's motion for a summary judgment, from which judgment the plaintiffs have prosecuted this appeal.

The motion for a summary judgment on behalf of the Hospital set up its immunity as a charitable institution. Appellants answered the motion for a summary judgment in effect admitting the charitable immunity of the Hospital, but alleging that there are certain recognized exceptions to the doctrine of charitable immunity, among which is that a charity may be held liable for administrative negligence in the performance of a non-delegable duty as distinguished from employee negligence. It was charged that the Hospital was guilty of administrative negligence in failing to employ a regis-

tered pharmacist, under the circumstances of this case, to administer its pharmacy or drug room, and that such negligence was a proximate cause of the death of Danny.

Appellants alleged "that at all times pertinent to this law suit such Defendant failed to comply with the standards established by the Joint Commission on Accreation of Hospitals and of the American Hospital Association in regard to the operation of pharmacies and drug rooms; the storage, safeguarding, preparation, and dispensing of drugs; competency of department personnel; control of dangerous drugs; and medical staff committee on the formulation of drug policies." And further alleged that "These failures and each of them were negligence, a proximate cause of the death of Danny Sullivan, and an exception to the rule of Charitable Immunity."

Appellants further alleged "that such Defendant was guilty of administrative negligence in failing to provide adequate personnel for the operation of the hospital's pharmacy or drug room facilities and the distribution of drugs; and in failing to formulate and carry out a proper and adequate policy, with the necessary and proper rules and regulations, governing the operation of the hospital's pharmacy or drug room and the dispensing of drugs from the pharmacy or drug room. These failures and each of them, were negligence, a proximate cause of the death of Danny Sullivan, and an exception to the rule of Charitable Immunity."

Appellants stipulated that appellee is a charitable institution, and that they would have no cause of action unless it was based upon one of the well-recognized exceptions to the rule of charitable immunity.

Appellee filed no reply to this answer. Neither the motion nor the answer was verified. No supporting affidavits were filed either by appellants or appellee. The only support for the motion for summary judgment was the unverified pleadings, the depositions of Sister Mary Severine and Sister Mary Judith, and the Charter of the Hospital. The Charter shows that the Hospital is a charitable institution and that its incorporators are Mary Sebastian Waurniak, Mary Chrysantha Bentley, and Mary Judith McCoy.

From the depositions of the two sisters, it is shown that at about 2:30 in the afternoon on December 31, 1961, Danny Sullivan was taken to the Hospital by his grandmother, Mrs. Rita Sneed. He had apparently taken some tablets of an unknown type. Danny was taken into the emergency room of the Hospital where he was treated by Dr. Anderson. Upon orders from the doctor a dose of "ipecac" was given to Danny by Sister Mary Severine. This dose of "ipecac" was two teaspoons. A second dose, which the Sister attempted to administer, was the same size. The "ipecac" in question was in the emergency room and was marked "Syrup of Ipecac" although it may have been "fluid extract of ipecac." It is contended that as a result of his taking such "ipecac" Danny Sullivan died. A second child to whom some of the same "ipecac" was administered died in the hospital during the same week.

In August or September, 1961, the hospital purchased a pint bottle of "Ipecac"—"Fluid Extract." The pint bottle of "Ipecac" went to the drug room, where it was broken down into smaller bottles as it was needed in the emergency room. This was the only "Ipecac" in the drug room at the time.

Sister Mary Judith was not a registered pharmacist, she had no training in pharmacy other than that taken during her formal nurse's training in the year 1923. There was no one on the staff of the hospital who was a registered pharmacist. Although Sister Mary Judith was in charge of the drug room, she did not know the difference between "fluid extract of ipecac and syrup of ipecac," she said, "Well, there must be. I don't know. I couldn't— I am not a pharmacist and I wouldn't know." At that time, she did not know "whether or not the administration of straight extract of ipecac

would be in any way harmful to a child to whom it was administered."

There was no control exercised by the administrators of the hospital over the drug room. In fact, the "pint bottle of ipecac" in question was "just sitting on the shelf in the drug room, like any other bottle of medicine," and although Sister Mary Judith and her assistant were supposed to break down the big bottle of the drug to the smaller ones, the Sisters had no idea who had removed the "Fluid Extract" from the original pint bottle.

It should be noted that the hospital generally buys drugs in large quantity containers, which are broken down from big bottles to little bottles in the drug room. All of the breaking down was done by Sister Judith and her assistant, Mrs. Schaffer, neither of whom are pharmacists.

At all times pertinent to this lawsuit the Sisters of St. Francis of Texas were in complete control of the Refugio County Hospital of which Sister Mary Judith was an incorporator and a member of the original Board of Directors. There was no deposition by Mrs. Schaffer who was in charge of the drug room on December 31, 1961, when Danny was brought to the Hospital.

■ When a defendant moves for a summary judgment he must assume the negative burden of clearly showing, as a matter of law, that plaintiff has no cause of action against him. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Glasgow v. Floors, Inc. of Tex., Tex.Civ.App., 356 S.W. 2d 699; Seale v. Muse, Tex.Civ.App., 352 S.W.2d 534; Achterberg v. Gillett, Tex. Civ.App., 322 S.W.2d 306, ref. n. r. e. 159 Tex. 591, 325 S.W.2d 384; Neigut v. McFadden, Tex.Civ.App., 257 S.W.2d 864; Statham v. City of Tyler, Tex.Civ.App., 257 S.W.2d 742; O'Quinn v. Scott, Tex. Civ.App., 251 S.W.2d 168; De La Garza v. Ryals, Tex.Civ.App., 239 S.W.2d 854.

■ All doubt as to the existence of a genuine issue as to any material fact must be resolved against the party moving for summary judgment. Smith v. Ellis, Tex. Civ.App., 319 S.W.2d 745; Archer v. Skelly Oil Co., Tex.Civ.App., 314 S.W.2d 655, ref. n. r. e. 159 Tex. 154, 317 S.W.2d 47; Trammell v. Trammell, Tex.Civ.App., 290 S.W.2d 324; Gunnels v. Atcheson, Tex.Civ.App., 288 S.W.2d 878; Feldman v. Drumheller, Tex.Civ.App., 284 S.W.2d 237; Roberson v. Allstate Ins. Co., Tex.Civ.App., 278 S.W. 2d 179; Kenny v. Starnes, Tex.Civ.App., 277 S.W.2d 919; Ward v. Stroud, Tex.Civ. App., 274 S.W.2d 136.

■ When the record in a negligence case discloses no full development of the facts, the entry of a summary judgment for defendant is improper, since the issue of negligence is ordinarily one of fact, requiring a full development of all the facts as a basis for a proper finding. Loud v. Sears, Roebuck & Co., Tex.Civ.App., 262 S.W.2d 548.

■ The duty of a court in hearing a motion for a summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility. Gulbenkian v. Penn, supra.

■ Questions of negligence and proximate cause are usually issues of fact which cannot be determined by a summary judgment. Fuller v. Southwestern Greyhound Lines, Inc., Tex.Civ.App., 331 S.W.2d 455.

■■ With these well recognized principles of law applicable to the granting or refusing of summary judgments in mind, we have concluded, from the limited record before us, that appellee did not discharge the negative burden resting upon it of clearly showing that appellants did not have a cause of action against it. The charitable immunity doctrine does not protect appellee from liability for injuries caused by administrative negligence on the part of appellee as to non-delegable duties. The depositions of the two Sisters do not con-

clusively show that Danny's death was not caused by administrative negligence.

Inasmuch as the judgment must be reversed and the cause remanded we deem it advisable not to discuss the evidence in detail.

The summary judgment is reversed and the cause remanded.