Mary A. **WATKINS**, Petitioner,

v.

**SOUTHCREST BAPTIST CHURCH,**
Respondent.

No. A–10633.

Supreme Court of Texas.

Jan. 5, 1966.

Rehearing Denied March 9, 1966.

A. W. Salyars, Lubbock, for petitioner.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for respondent.

NORVELL, Justice.

Mary A. Watkins slipped and fell on the floor of the Southcrest Baptist Church of Lubbock, Texas. She brought suit for approximately $60,000 for her injuries, alleging that the church was negligent in permitting its floor to be in a slick and dangerous condition, or in failing to remove from the floor some slippery substance. The church filed a motion for summary judgment to which was attached a copy of its corporate charter. The charter shows that the church was incorporated for the support of public worship. It has no capital stock, and it is provided that no dividend should ever be paid. No answer was filed to the motion for summary judgment. Through a request for admissions, the plaintiff established that she did fall in the church, that the church building was operated by the church, and that she was among those invited to enter the church. It was stipulated that the church had a policy of liability insurance, but the amount of the coverage and the provisions of the policy are not shown. The stipulation contains a provision that the church took the position that the question of insurance coverage was immaterial and that the stipulation was made solely in connection with the motion for summary judgment. The trial court granted the church's motion for summary judgment relying primarily upon Southern Methodist University v. Clayton, 142 Tex.

179, 176 S.W.2d 749 (1943). See Tex.Civ. App., 385 S.W.2d 723.

The law of charitable immunity in Texas generally was set forth in the Clayton opinion as follows:

"It seems definitely established in this state that a charity corporation is liable to an employee for injuries proximately caused by the negligence of its officers, vice principals or agents. Armendarez v. Hotel Dieu, Tex.Civ.App., 145 S.W. 1030; Hotel Dieu v. Armendariz, Tex.Civ.App., 167 S.W. 181; Id., Tex.Com.App., 210 S.W. 518. On the other hand, it is equally well settled that it is not liable for such injuries to beneficiaries of the charity, provided it is not negligent in hiring or keeping the agent whose negligence proximately causes the injuries. The principle has been applied in several cases where injuries were received by patients in charity hospitals because of the alleged negligence of nurses. See St. Paul's Sanitarium v. Williamson, Tex.Civ. App., 164 S.W. 36, error refused; Barnes v. Providence Sanitarium, Tex. Civ.App., 229 S.W. 588, error dismissed; Baylor University v. Boyd, Tex.Civ.App., 18 S.W.2d 700; Enell et al. v. Baptist Hospital, Tex.Civ.App., 45 S.W.2d 395, error refused; Steele v. St. Joseph's Hospital, Tex.Civ.App., 60 S.W.2d 1083, error refused."

As to the rule relating specifically to invitees, this Court said:

"We must agree, therefore, with the holding of the Supreme Court of South Carolina in the Vermillion case, supra (Vermillion v. Woman's College of Due West, 104 S.C. 197, 88 S.E. 649), that no liability exists. As said in that case, 'This rule does not put such char-

ities above the law, for their conduct is subject to the supervision of the court of equity; nor does it deny an injured person a remedy for his wrong. It is merely an exception to the rule of respondeat superior, which is itself based on reasons of public policy.' "

 The allegations of negligent acts or omissions are of a nature which cannot be attributed to the church itself or to a vice principal. Obviously, the failure to keep the floor clean and clear of substances which would render it slick and dangerous is an act or omission attributable to the servants and employees of the church. Under the rule of the Clayton case, the doctrine of respondeat superior is not applicable.

The primary thrust of petitioner's argument here is that Southern Methodist University v. Clayton and other decisions of this Court of like import should be overruled. She relies primarily upon the landmark opinion rendered by Mr. Justice Rutledge in the Georgetown College case.[1] See also, annotation, "Immunity of Nongovernmental Charity from Liability for Damages in Tort", 25 A.L.R.2d 29. See also, Later Cases for 19–31 A.L.R.2d, Vol. 3, 1965.

In *Clayton*, the Georgetown College case was considered and said to contain an excellent review of the various holdings made by the courts of the American and English jurisdictions with regard to the question of charitable immunity. It is pointed out by the Court of Civil Appeals in its opinion that while this Court took note of the Georgetown College opinion, it did not choose to follow it. In fact, the rule of charitable immunity may be said to have been extended by Clayton so as to embrace strangers to the charity as well as beneficiaries.

1. President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 130 F.2d 810 (1942). While the reasoning set forth in the opinion has served as a basis for repudiating the charitable im-

munity doctrine in an number of jurisdictions which had therefore followed it, the opinion stated that the questions of charitable immunity was an open one in the District of Columbia.

█ The principle of vicarious liability based upon the rule of respondeat superior is essentially a public policy doctrine. Mechem, Outlines of Agency, § 351. Courts have applied the rule to certain factual situations and refused to apply it to others. When the application of the doctrine has been determined by court decisions, a change in application may be judicially effected. The situation is not the same as a judicial repeal of a statute for example. However, there is a case for a legislative rather than a judicial change of court created policy rules. Statutes effecting policy changes operate prospectively and are generally adopted following a period of deliberation accompanied by a sufficient and practical notice to all those who might be affected thereby. In fixing classifications of charitable institutions (for example) such as churches, hospitals, schools, etc.[2] and prescribing limits of liability, the legislative power is much more flexible and amenable to particular needs and detailed require-

ments than is the judicial process.[3] It is unnecessary for us to repeat here the numerous arguments that have been advanced on both sides of the subject.[4] Since the decision in the Clayton case, the courts of Texas have recognized the rule set forth therein as being the settled law of this State so far as charitable immunity is concerned. By way of example, the Galveston Court of Civil Appeals in 1944 followed the doctrine of charitable immunity laid down in the Clayton case in Scott v. Wm. M. Rice Institute, 178 S.W.2d 156, and this Court refused application for writ of error. Also, since the Clayton decision, this Court has refused applications for writ of error, n. r. e., in the following cases decided by the Courts of Civil Appeals of this State, all of which followed the Clayton case and its holding upon the question of charitable immunity: Baptist Memorial Hospital v. Marrable, 244 S.W.2d 567 (1951); Felan v. Lucey, 259 S.W.2d 302 (1953); Baptist Memorial Hospital v. McTighe, 303 S.W.2d

2. There is an obvious distinction between a church on one hand and a hospital on the other. Churches are largely dependent upon volunteer help to carry on many of their functions. Actually the church or its vice principals are not positioned to exercise an effective control over those who carry out the details incident to the major portion of the church's works and ministry.

3. In a dissenting opinion filed in Richards v. Birmingham School District, 348 Mich. 490, 83 N.W.2d 643 (quoted in Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1), it was said:
 "The clear-cut remedy to the problem of governmental immunity undoubtedly lies with State legislation of the nature and character of that adopted within recent years by the Federal government through congress. Court action to achieve the same goal by repudiation of this long-established common-law doctrine is hampered by unnumbered precedents and the doctrine of *stare decisis*. It cannot come as can legislative change after ample public discussion and with full warning to those bodies upon whom liability would be thrust to take such measures of

an insurance nature as they might deem desirable."

4. In Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961), the proposition that any change in the rule of governmental immunity (which in many respects is similar to the rule of charitable immunity) is a matter for the legislative branch of government, is strongly argued by Mr. Justice Carr (111 N.W.2d 1) while the opposite view is vigorously stated by Mr. Justice Edwards (now judge of the Sixth Circuit Court of Appeals) (111 N.W.2d 20). See also, Dalkowitz "Torts, Charitable Institutions, Liability of University for Negligence of Instructor", 20 Texas L.Rev. 505; Uchiyama, "Corporations, Torts, Liability of Charitable Corporation for Torts of its Servants", 22 Texas L.Rev. 500; Taylor, "Torts, Liability of a Charitable Organization to a Paying Patient for Negligence of its Servants", 32 Texas L.Rev. 476; McDonald, "Torts, Liability of Charitable Institutions", 5 Baylor L.Rev. 199; Price "Tort Liability of Charitable Institutions—Proposed Legislation", 7 Baylor L. Rev. 487; and Feather, "The Immunity of Charitable Institutions from Tort Liability", 11 Baylor L.Rev. 86.

446 (1957); Penaloza v. Baptist Memorial Hospital, 304 S.W.2d 203 (1957); Sandone v. Dallas Osteopathic Hospital, 331 S.W.2d 476 (1960); Davidson v. Methodist Hospital of Dallas, 348 S.W.2d 400 (1961); and Goelz v. J. K. & Susie L. Wadley Research Institute and Blood Bank, 350 S.W.2d 573 (1962).[5]

■ It would seem that Texas charities including churches, missions, hospitals, the Salvation Army and other similar organizations should be entitled to rely upon the decision of this Court in Southern Methodist University v. Clayton and the cases following such decision. Such institutions may have, with justification, made or refrained from making, plans in the light of the holdings herein mentioned. That group includes the governing board of the Baptist church here involved. We therefore hold that the church was not liable for petitioner's injuries.

■ Petitioner also urges that as the Southcrest Baptist Church had procured a policy of liability insurance, it had thereby waived its charitable immunity to the extent of the amount of damages provided for in the contract of insurance. As heretofore mentioned, the extent of the insurance coverage and provisions of the policy are not disclosed by the record. Apparently the policy was an indemnity contract written on a form prescribed by the State Board of Insurance. In Texas, as pointed out in the cases above referred to, while churches or other charitable institutions are not liable for the acts or omissions of their servants under the doctrine of respondeat superior, they are not absolutely immune from tort liability. The procuring of an indemnity insurance policy is not a mere empty gesture. On the record before us, we may as well assume that the premium rates on indemnity policies issued to charitable institutions are based upon their limited tort liability as to presume the contrary. However, the all important factor is that the procuring of indemnity insurance cannot create liability where none exists in the absence of such insurance. We do not have a case here wherein an insurance company has contractually rendered itself directly liable to one who suffered injury, regardless of whether or not the charitable institution is liable for such injury under the law.

■ We note that most jurisdictions have refused to recognize an exception to the immunity doctrine based upon the existence of liability coverage. Annotation, 25 A.L.R.2d, at 139, § 37 (1952); 15 Am. Jur.2d 165, Charities § 154 (1964). This Court by refusal of a writ of error approved the holding that the purchase of insurance under legislative sanction by a state agency to protect state officers and employees from liability growing out of the use of

5. In addition to the cases mentioned above, the following Courts of Civil Appeals' decisions adhered to the rule of the Clayton case but no applications for writ of error to the Supreme Court were filed: J. Weingarten, Inc. v. Sanchez, 228 S.W.2d 303 (1950); Jones v. Baylor Hospital, 284 S.W.2d 929 (1955); and Yost v. Texas Christian University, 362 S.W.2d 338 (1962).

An exception to the rule of charitable immunity was recognized in Medical and Surgical Memorial Hospital v. Cauthorn, 229 S.W.2d 932 (Tex.Civ.App.1950, n. r. e.). While the rule of the Clayton case was recognized, it was held that the negligence of the hospital in the selection and supplying of instrumentalities with which to treat its patients was of the same quality as negligence on the part of the hospital to exercise due care in the selection of its physicians, nurses and attendants. Similarly, in Sullivan v. City Sisters of St. Francis of Texas, 374 S.W.2d 294 (Tex.Civ.App.1963, no writ hist.), it was held that the charitable immunity doctrine does not protect a hospital from liability for injuries caused by administrative negligence on the part of the hospital as to its non-delegable duties. This was a case of a failure to select one properly qualified to perform the service of dispensing drugs.

vehicles did not constitute the waiver of governmental immunity. Texas Prison Board v. Cabeen, 159 S.W.2d 523 (Tex.Civ. App.1942). In Baptist Memorial Hospital v. McTighe, 303 S.W.2d 446 (Tex.Civ.App. 1957, ref. n. r. e.), there was evidence that the hospital involved had a policy of indemnity insurance. The court held however that the case was nevertheless ruled by the Clayton decision. See Annotation, Municipal Immunity—Insurance, 68 A.L.R.2d 1437 (1959). We overrule petitioner's contention that by procuring indemnity insurance the church waived its charitable immunity.

The judgments of the lower courts are affirmed.

WALKER, Justice (concurring).

I concur in the judgment of affirmance in this case, but would announce now that the doctrine of charitable immunity will not be recognized in cases hereafter arising.

GREENHILL, Justice (concurring).

The Court has correctly stated that in the past the law of this state has been that in the usual case, charitable institutions have enjoyed an immunity from tort liability. It has been also held that the presence or absence of indemnity insurance does not change the rule. Hence these institutions, with justification, have been entitled to rely upon these holdings, and they may or may not have protected themselves with insurance coverage. I therefore concur in the Court's decision adhering to the precedent which has been set in the past. When problems regarding title to land or contracts, or the necessity for contracts, are involved, precedent is necessarily a highly important factor. Hardware Dealers Mut. Ins. Co. v. Berglund (Tex.Sup.1965), 393 S.W.2d 309 at 315. This is not to say that a precedent involving liability or contract should never be summarily overruled. But where the matter involved is of the great magnitude as is charitable immunity, it seems to me to be proper to give some warning that the precedent may be reconsidered.

I am impressed with the arguments made that the doctrine of charitable immunities may now be unsound in the light of current conditions, particularly as to some "charities" which now enjoy immunity. Some "charities" are now large business institutions which make substantial charges for their services. It is difficult, for example, to consider a person who pays $20 to $50 per day for a hospital room to be the object of charity and entitled to no protection from negligent acts of the employees of the hospital. Many forceful and persuasive opinions have been written to the effect that the entire doctrine is outmoded or should be modified, generally beginning with President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C., 123, 130 F.2d 810 (1942), by Justice Rutledge. Some twenty-four states have now rejected the doctrine of charitable tort immunity.[1] The doctrine had its inception in early English cases which have long since been overruled.[2]

1. The cases are collected and discussed in an annotation, 25 A.L.R.2d 29 (1952), and in Fisch, Charitable Liability for Tort, 10 Villanova L.Review 71 at 74 (1964). There are some later cases such as Flagiello v. Pennsylvania Hospital (1965), 417 Pa. 486, 208 A.2d 193, as to hospitals; and Adkins v. St. Francis Hospital of Charleston, W. Va. (W.Va. Sup.1965), 143 S.E.2d 154. The doctrine is widely criticized by writers. See, e.g., Prosser, Torts, 1019 et seq. (3d ed. 1964); and articles in 11 Baylor L.Rev.

86 (1959), 16 Southwestern L.J. 689 (1962), and 3 South Texas Law Journal 225 (1958). To the contrary, see Joachim, Why Abolish Stare Decisis?, 45 A.B.A.J. 822 (Aug. 1959), discussing cases from states refusing to abrogate the doctrine.

2. Mersey Docks v. Gibbs, L.R. 1 H.L. 93 (1866); Foreman v. Mayor of Canterbury, 6 Q.B. 214 (1871); Gilbert v. Corp. of Trinity House, 17 Q.B. 795 (1886).

So while I am of the opinion that the Court has correctly decided this case, I believe that the Court should declare that particularly in cases arising after this case becomes final, it would feel free to re-examine the doctrine. While I ordinarily honor without further question the holdings of the Court, it seems to me that this question is of such great importance that the question should be re-examined. So for whatever it may be worth, and so that people and institutions may be appraised of the situation, this *caveat* is here noted.

This procedure was suggested by Cardozo in an address to the New York Bar Association in January 1932 as reported in Levy, Realistic Jurisprudence and Prospective Overruling, 109 U.Pa.L.Rev. 1 at 13 (1960), and also by Robert E. Keeton, Creative Continuity in the Law of Torts, 75 Harv.L. Rev. 463 at 490 (1962). A similar *caveat* was used by the Supreme Court of Arkansas in Hare v. General Contract Purchase Corp., 220 Ark. 601, 249 S.W.2d 973 at 977 (1952). This procedure does not go nearly so far as the "Sunburst" doctrine of adhering to precedent for the particular case but dogmatically announcing that the rule will be different hereafter, and stating what the new holding shall be. Great Northern Ry. Co. v. Sunburst Oil & Ref. Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), written by Cardozo. Several states including Illinois, Michigan and Wisconsin have rejected the immunity doctrine under the "Sunburst" doctrine. See Keeton, supra, at page 490 for a list of the cases. See also Note, Charitable Immunity—Contracts, Torts, Rule of Property and Prospective Overruling, 16 Ark.L.Rev. 289 (1962), and Note, 60 Harv.L.Rev. 437 (1947). In Spanel v. Mounds View School District, 264 Minn. 279, 118 N.W.2d 795 (1962), the Minnesota Supreme Court prospectively overrule the immunity of school districts, mu-

nicipal corporations, and other subdivisions of government whose immunity had been conferred by judicial decision, effective after the adjournment of the next Minnesota legislature. The court in that case pointed out that it had, in a previous opinion, expressed dissatisfaction with the doctrine, had called the matter to the attention of the legislature, and the legislature had wholly ignored the problem. Thus the court, in its former opinion, had given a warning that it felt free to re-examine the doctrine of immunity to school districts and other governmental subdivisions. These cases are not cited as a precedent for what should or should not be ultimately held, but as a precedent for the procedure which should be followed here.

STEAKLEY, J., joined in the concurring opinion.

CALVERT, Justice (dissenting).

The doctrine of charitable immunity is a court-made doctrine. I would abolish it outright, preferably *instanter*, without distinction as to the nature or character of the various charitable organizations. I would agree to abolish it prospectively so that liability would attach only in cases arising hereafter. Finally, if driven to it, I would abolish it effective upon adjournment of the Regular Session of the 60th Legislature in 1967, thus permitting the Legislature to act in the matter if it wished to do so.

Believing that the doctrine should be abolished here and now, I would reverse the judgments of the courts below and remand this cause to the trial court for trial on the merits.

Accordingly, I dissent.

SMITH, J., joins in this dissent.