John W. HOWLE, Individually and as Next Friend for Johnny Howle, a Minor, Petitioner,

v.

CAMP AMON CARTER et al., Respondents.

No. B–2613.

Supreme Court of Texas.

July 7, 1971.

---

Scarborough, Black, Tarpley & Scarborough, Abilene, Wilson, Berry & Jorgenson, Dallas, Byrd, Davis, Eisenberg & Clark, Bob Roberts, Austin, for petitioner.

Strasburger, Price, Kelton, Martin & Unis, Royal H. Brin, Jr., Dallas, for respondents.

WALKER, Justice.

The defense urged in this case is charitable immunity, which has heretofore been recognized to a limited extent in Texas as an exception to the rule of respondeat superior. See Watkins v. Southcrest Baptist Church, Tex., 399 S.W.2d 530. We hold that, with respect to causes of action arising from events occurring after the motion for rehearing in *Watkins* was overruled, a charitable enterprise is subject to vicarious liability under the rule of respondeat superior applicable to business organizations operated for profit.

While attending Camp Amon Carter, an establishment operated by the Young Men's Christian Association of Fort Worth, Johnny Howle was struck in the eye by a sinker or hook attached to a fishing line cast by a fellow camper, Gary Post. As a result of this accident, which occurred in 1967, Johnny lost the sight of one eye. Suit was brought by John W. Howle, individually and as next friend for Johnny, against Gary Post, Camp Amon Carter, and the Y.M.C.A. It was alleged, among other things, that the injuries and damage sustained by Johnny were proximately caused by the negligence of camp employees in failing to supervise Gary properly and prevent his casting in the area where he was casting. After severing the cause of action asserted against Gary, the trial court sustained the motion for summary judgment of Camp Amon Carter and the Y.M.C.A. on the ground of charitable immunity. The Court of Civil Appeals affirmed. 462 S.W.2d 624.

The several opinions in *Watkins* gave ample notice that the doctrine of charitable immunity would be reconsidered and might well be abrogated. It is now completely abrogated with respect to causes of action arising from events occurring after the motion for rehearing in *Watkins* was overruled on March 9, 1966.

The judgments of the courts below are reversed, and the cause is remanded to the district court.

POPE, Justice (dissenting).

I respectfully dissent. It is my opinion that the question of immunity on the part of certain described charitable institutions is a policy matter which can be better resolved by the Legislature. Courts, unlike the Legislature, are not structured to hear public witnesses on issues of policy. Courts, unlike the Legislature, are incapable of detailing the limitations which often accompany changes in policy. Following our decision in Watkins v. Southcrest Baptist Church, 399 S.W.2d 530 (Tex.1966), the Legislature in May, 1967, authorized a committee to study the problem of charitable immunity. Texas Laws 1967, House Concurrent Resolution No. 54 at p. 2883. The absence of any further action by the Legislature is subject to differing meanings, but among them is the idea that the Legislature was not impressed with the desirability of abolishing the doctrine which exempts from liability charitable institutions, such as hospitals, schools, churches, and orphanages.

Immunity from tort liability is a subject to which the Legislature has very recently addressed its attention. The 61st Legislature in 1969 enacted the Tort Claims Act which became effective on January 1,

1970.[1] I, therefore, find little merit in the suggestion that the Legislature failed to abolish charitable immunity because it probably was of the opinion that the judiciary should tend to that job. If the Legislature considered charitable immunity a judicial problem, one may wonder why it did not feel the same way about governmental immunity.

The fact is that the Legislature has already acted and did not wait for the judiciary to act on the subject of governmental immunity. Significantly, the Tort Claims Act preserves about as much governmental immunity as it waived. The act permits recovery for money damages for personal injuries or death but not for damages to property. The Act limited liability to $100,000 per person and $300,000 for any single occurrence. It does not allow recovery of punitive damages. Immunity from suit was not waived as to all classes of torts. The Act limits recovery to damages "arising from the operation or use of a motor-driven vehicle and motor-driven equipment * * *." The Act then states that even that terminology will not include motor-driven equipment used for the operation of floodgates or water release equipment by river authorities. Section 14 of the Act contains exactly one dozen exemptions from liability. Section 19A of the Act says that the Act does not apply to school districts except as to motor vehicles.

I find this method and technique on the part of the Legislature in dealing with a kindred immunity doctrine highly significant. Since the Legislature has not been hesitant in attacking the problem of governmental immunity from tort liability, and since it has been rather careful in specifying what immunity has been waived and what has not, I consider it presumptuous of this court to act as it has in the area of charitable immunity.

The undesirable consequences of the majority's action in totally abolishing the doctrine of charitable immunity can best be illustrated by an examination of the inconsistencies which this holding will necessarily create. For example, a public school's liability for damages is limited to those damages caused by motor vehicles. The charitable educational institution benefits from no such limitation, nor could such a limitation be properly created by the judiciary. Nor does the charitable institution benefit, as does the public facility, from monetary ceilings on liability or from continued immunity from punitive damages. The sum of these inconsistencies is that the charitable institution, which performs no less a public service than its governmental counterpart, now faces unlimited exposure to a judgment of catastrophic proportions, while a public school or college remains rather well protected by legislation. In my opinion, this is not a desirable situation.

The same inconsistencies are apparent when dealing with medical facilities. For example, Section 18 of the Tort Claims Act provides that the term "motor driven equipment" shall not be construed to include medical equipment such as, but not limited to, iron lungs located in hospitals. We, therefore, are presented with a situation where the governmental hospital continues to benefit from its immunity, while the charitable hospital stands totally unprotected.

I find much merit in the arguments for limiting charitable immunity. My concern is that we are now disrupting an area of the law that the Legislature has already entered. The Legislature rather carefully avoided an overkill of the doctrine of governmental immunity. This court's opinion does not accomplish that result in its abrogation of charitable immunity. I would leave to the Legislature the task of completing what it has begun. Such action would afford greater harmony and more equal treatment among comparable institutions.

1. Statutory references herein are to Art. 6252–19, Vernon's Ann.T.C.S., known as the Texas Tort Claims Act.