**Bessie TOMPKINS, and husband, Charles Henry Tompkins, Plaintiffs-Appellees,**

v.

**The CITY OF EL PASO, Defendant-Appellant.**

**No. 29765.**

United States Court of Appeals, Fifth Circuit.

Sept. 29, 1971.

Jack Ratliff, El Paso, Tex., Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., for defendant-appellant.

Dudley R. Mann, Jr., El Paso, Tex., for plaintiffs-appellees.

Before GODBOLD, CLARK and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

On July 14, 1968, Mr. and Mrs. Tompkins were at the El Paso International Airport to meet the plane of an arriving relative. When the Tompkins learned that the plane was delayed they decided to wait in their car rather than in the terminal. As the Tompkins left the terminal building, they crossed Convair Road which separates the El Paso terminal from a metered parking area. Mrs. Tompkins and her husband had walked perhaps 20 feet when she caught the toe of her shoe on the edge of a drainage lid cover which extended ⅜ths of an inch high and protruded from the sidewalk in her path. She hit the ground hard, fracturing her hip and left arm. Mrs. Tompkins was at the time of the fall 75 years of age.

Upon trial of the case the evidence developed, and the jury found, that she was still on a sidewalk appurtenant to the El Paso International Airport. In Texas airports are considered governmental functions and retain the cloak of sovereign immunity from suit sounding in tort. Vernon's Ann.Tex.Civ.St. Art. 46d–15; Imperial Production Corp. v. City of Sweetwater, 210 F.2d 917 (5th Cir., 1954); City of Corsicana v. Wren, 159 Tex. 202, 317 S.W.2d 516 (1958). In Texas, moreover, an airport is defined to include areas which are appurtenant to airport facilities or rights of way. Vernon's Ann.Tex.Civ.St. Art. 46d–1(a).

Mr. and Mrs. Tompkins are citizens of the State of New Mexico and consequently brought their suit in the United States District Court for the Western District of Texas, El Paso Division. The trial court found:

"[T]hat the present trend of all states, including Texas, is to limit and do away with governmental immunity. Therefore governmental immunity granted to airport authorities by Article 46d, V.A. T.S., should not be extended to exempt airports where the city itself would be liable in a similar situation. * * * " [1]

The court, therefore, upheld the jury verdict for Mrs. Tompkins.

---

[1] There is no dispute (other than whether the city was constructively aware of the defect in the sidewalk, or whether the defect was, as a matter of Texas law, too small and insubstantial to be grounds for a verdict based on the negligence of a

■■ On appeal we must consider the propriety of the trial court's interpretation of Texas law. Freeman v. Continental Gin Co., 381 F.2d 459, 466 (5th Cir., 1967); Stool v. J. C. Penney Co., 404 F.2d 562, 563 (5th Cir., 1968). It is our view that a federal district court in an Erie case may, in making a vicarious determination of state law, base its conclusion upon all relevant sources to which the state courts would themselves look. As Professor Wright, however, aptly notes:

> "The federal court must keep in mind, however, that its function is not to choose the rule it would adopt for itself if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt." Wright, Law of Federal Courts, 240 at n. 32.

Even though other states have taken a similar position,[2] we must require that the case be decided as if by a Texas state court. This is not to say that the federal courts cannot be innovative or impart new direction to state law in diversity cases, rather the converse is true. It is, however, improper for the federal courts to disregard the forum state's jurisprudence on the subject of sovereign immunity, especially where that jurisprudence does not evidence a trend toward the position taken by the district court.

The Texas courts have by no means been consistent in their development of the Texas law of sovereign immunity. They have, however, evidenced no indication of an intention to abolish the rule,[3] if indeed a judicial fiat could abolish sovereign immunity in Texas. A comparison to the state of the doctrine of charitable immunity in helpful. In Watkins v. Southcrest Baptist Church, 399 S.W.2d 530 (Tex., 1966), the Texas Supreme Court vented the first rumblings that the doctrine of charitable immunity was in fundamental danger in the State of Texas. Then five years later in Howle v. Camp Amon Carter, 470 S.W.2d 629 (Tex., 1971), when the court did abolish the doctrine, it could do so by fiat, without limitations or qualifications, on the theory that since *Watkins* everyone had fair notice that this result might be reached. The Texas treatment of the doctrine of sovereign immunity, however, has been quite different. First, as far as its extension to airport facilities is concerned, it is a creature of statute. Art. 46d–15, V.A.T.S. This extension was affirmed by the Texas Supreme Court in Corsicana v. Wren, 159 Tex. 202, 317 S.W.2d 516 (1958). Moreover, as recently as in the case of Missouri Pacific R. Co. v. Brownsville Navigation District, 453 S.W.2d 812 (Tex.1970), rehearing denied May 20, 1970, the Texas Supreme Court has recognized the continuing viability of the doctrine of sovereign immunity and the necessity for a specific statutory waiver in the form of a consent to suit before tort suits may be maintained against governmental entities. See also Jones v. City of Dallas, 451 S.W.2d 271 (Tex.Civ.App.1970, err. ref. n. r. e.).

■ Thus, if the sidewalk was an appurtenance of the airport facility, the Tompkins are unable to sue the City of El Paso without a specific statutory waiver of the immunity granted the airport by Art. 46d–15. We have neither found nor been referred to any applicable waiver of that immunity.

The case, therefore, turns about the central question of whether the scene of the accident was, as the jury on special

---

city) that had the fall occurred on an ordinary city street the city would have been liable for the damages. This is a consequence of the Texas courts' holdings that maintenance of sidewalks are a proprietary function. Cf. City of Beaumont v. Silas, 200 S.W.2d 690 (Tex.Civ. App., 1947, err. ref. n.r.e.).

2. Cf. Smith v. Idaho, 93 Idaho 795, 473 P.2d 937 (1970); Willis v. Dept. of Conservation & Econ. Dev., 55 N.J. 534, 264 A.2d 34 (1970).

3. "Governmental immunity is a viable legal principle in Texas." Rodriquez v. Medical Arts Hospital, et al., 437 F.2d 1203 (5th Cir., 1971).

interrogatory found, an area appurtenant to the airport facility or right of way. If the finding of the jury is sustained, then the City of El Paso is immune from this tort suit by operation of Art. 46d–15. If, however, the interrogatory to the jury was improper, or if, as a matter of law, a sidewalk on the far side of a public street is not an appurtenance to a facility on the opposite side of the street, or if the jury's finding is contrary to the evidence, then the plaintiffs below are entitled to keep their verdict.

We conclude that the jury's finding was supported by the evidence and meets the standard enunciated by this court in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir., 1969). We must, however, question whether the charge of the district court in this case was proper. It is settled that a district judge may ask special interrogatories of the jury in the exercise of his discretion. Rule 49(b) F.R.Civ.P.; Tennessee Consolidated Coal Co. v. U.M.W., 416 F.2d 1192 (6th Cir., 1969), cert. den. 397 U.S. 964, 90 S.Ct. 999, 25 L.Ed.2d 256 (1970). In the case at bar the trial court instructed the jury on the issue of appurtenances in two instances:

"The defendant claims that * * * where she fell was a part of the airport facility. It was an area appurtenant to the airport and used and intended for airport facilities, and I'll ask you certain questions about that a moment from now. That's one of the positions that they have, that this was an airport facility." ·

Later in his charge, the trial judge asked the jury to answer yes or no the question " * * * was the sidewalk in question in an area appurtenant to the airport which was used or intended for use of airport facilities or right-of-way. The term right-of-way includes areas for use by pedestrians, traffic there at the airport * * *."

It is asserted by counsel for the Tompkins that the charge was faulty for it, in addition to tracing the language of Art. 46d–1(a), added that "the term right-of-way includes areas for use by pedes-

trians." We cannot agree. While it is true, as counsel for Tompkins asserts, that the additional terms are not part of Art. 46d–1(a), we do not believe this portion of the charge to be erroneous. The jury in this case was asked to return both a general verdict and answers to interrogatories. In such cases the court's charge must necessarily be more comprehensive than where a special verdict alone must be returned, and the trial judge's deviation from the language of Art. 46d–1(a) is not, as a matter of federal law, fatal. 5 Moore's Federal Practice 49.04 and the cases cited.

Counsel for the Tompkins additionally asserts that the instruction that a right of way includes areas for use by pedestrian traffic is erroneous as a matter of Texas law. In arguing before Judge Guinn that this charge was erroneous, counsel, after quoting Art. 46d–1(a), stated:

"* * * So you have your airport, and you draw a line by what constitutes actually associated with airplane traffic that—in which the Federal Aviation sets the rules and regulations has nothing to do with—extreme definition. That would be the same as saying that if the legislature, and they apparently did not, if they intended to say parking, pedestrian parking, car parking, pedestrian walkways and all that, they could have put that in the statute, but they merely put in that the things associated with aircraft traffic regulations, the thing in which the Federal Aviation authorities has control over. Therefore, the parking lot across the street, the sidewalk for pedestrian traffic, no matter what use it for (sic), is not an airport facility, the statute interpret it (sic)."

While this construction is appealing, it does not seem to reflect the statutory pattern employed by the Texas Legislature when it enacted the Municipal Airports Act in 1947. In § 2 of that Act, Article 46d–2, V.A.T.S., the Legislature designated the proper scope of land acquisition for airport facilities. Article 46d–2(a) in part reads: "* * * in-

cluding the construction, installation, equipment, maintenance and operation at such airports of buildings and other facilities for the servicing of aircraft or for the comfort and accommodation of air travelers."

■ Thus a charge which asks the jury to determine whether the location on the sidewalk where Mrs. Tompkins fell was within a zone of property being maintained for the accommodation of air travelers was permissible. Moreover, as we previously noted, the jury's determination of the factual issue was proper and supported by the weight of the evidence and on the basis of the record taken as a whole. Finally, as a matter of Texas law, we are unable to say that a sidewalk on the far side of a public street, which adjoins a metered airport parking lot and which extends only for its length, is not appurtenant to the airport terminal facility.

Since the place where Mrs. Tompkins fell was within the bounds of an area constructed for the accommodation of air travelers, and since Texas law provides that all land acquired and used in accordance with the Municipal Airports Act is land acquired and used for a governmental purpose, and since Texas has retained, to the extent unwaived, the doctrine of sovereign immunity, we conclude that the judgment entered in the Tompkins' favor cannot stand. Having reached this result we need not consider appellants other points of error.

In conclusion, we feel compelled to reiterate that the disposition of this case is mandated by the laws of the State of Texas. Resolution of Texas's peculiar distinctions [4] in the area of sovereign immunity is a function for that state's legislature and not for a federal court sitting in a diversity case.

The judgment of the district court is reversed and the case is remanded with instructions to enter judgment for the defendant.

4. See discussion by Texas Supreme Court Justice Joe Greenhill, 31 Tex.Bar Journal 1036, at page 1066.